## No. 10,240.

41 181
47 1501
47 1510
41 181|
d111 986|

## FIRST NATIONAL BANK OF SHREVEPORT VS. THE BOARD OF REVIEWERS OF ASSESSMENTS.

However true it be, that United States bonds are not taxable as independent assets, and that their taxation does not depend upon constitutional provisions of the different States, it is a matter beyond discussion, that, when the capital of a bank is in part or in whole, invested in them, the *shares* of such banks, whether national or State, are liable to State taxation.

In the assessment of the shares of a bank, whose capital is represented by stock, it is immaterial whether the capital was or was not invested in United States bonds and State bonds, although, as a rule, the same be, themselves, exempt from taxation.

The words, "all exempt property," found in sec. 27 of Act 97 of 1886, relating to deductions from the amount of taxes assessed to such shares, do not apply to United States bonds, or to State bonds, in which the capital of a bank, State or national, represented by shares, has been invested.

APPEAL from the First District Court, Parish of Caddo.
*Taylor, J.*

*Wise & Herndon* for Plaintiffs and Appellants.

On the same side, on Application for Rehearing, *Charles B. Singleton :*

We have shown:

1. That your Honors' construction of Act No. 97 is erroneous because, in one class of business organizations, whose capital is composed in part of bonds exempt from taxation, you allow the amount of the bonds to be deducted from the capital, when assessed for taxation, but in another class of business organizations, equally entitled to such deduction, you deny this right. This is unequal taxation, and therefore unconstitutional. Const. Art. 203.

2. Shares of Stock, under both State and Federal law, are portions of the capital divided into parts and called shares; and all the shares are equal to all the capital. La. R. S. Sec. 297 ; R. S. U. S. Sec. 5134.

3. Shares separated from the stock have no value, except such as the franchises may give them, which cannot be taxed by a State.

4. That the franchises in this case are of little, or no value; but whatever value they may have must be ascertained by a legal assessment. The Legislature cannot assess them or fix an arbitrary value upon them. Const. Art. 203.

5. That the division of capital into parts or shares cannot deprive a corporation of the right to have all bonds exempt from taxation composing a part of its capital, from being deducted from the capital, when assessed for taxation.

6. United States bonds in the hands of any person, company, etc., cannot be taxed by a State. 2 Wall. 200 ; 2 Black 627 ; 20 Ann. 447 ; 29 Ann. 751 ; 33 Ann. 601 ; and your Honor's decision in this case.

7. That your Honors erred in confining "all exempt property" in Sec. 27 Act 97, to the exemptions found in Sec. 1 of that Act and Const. Art. 207.

8. That the Legislature construed said words, "all exempt property," in Sec. 19 of said Act by showing that the Act included bonds which are made taxable in Sec. 1, and not by Art. 207 Const.

9. That the imposition of a tax on State bonds impairs the obligation of a contract, injures the *Fisc*, and reduces their market value.

10. That taxing bonds is against public policy, because it causes their disuse by banks.
11. That banks ought to be allowed, like other capitalists, to invest in bonds all their capital they can spare.
12. That the Sovereign should not complain that a capitalist invests all his money in untaxable bonds, because the Sovereign, by issuing bonds, invited him to do so.

### *Henry C. Miller:*

The 27th section of the Revenue Act of 1886, and not the federal decisions, on the power of States to tax shares of bank stock, controls this case. See Act No. 98 of 1886, 28th Section, page 144, § 27.

It is exclusively the legislative province to prescribe the method of assessing property for taxation. Heine vs. The Levee Commissioners, 19 Wallace, p. 665; New Orleans vs. Houston, 119th United States Reports, p. 278.

The provision of the Revenue Act of 1888, for the deduction of "all exempt property in assessing the shares of banks and other corporation," requires the deduction of United States bonds, bonds of the State of Louisiana, and of the City of New Orleans, part of the capital of the corporations, all such bonds being non-taxable and fairly included in the words "all exempt property" to be deducted, used in the Act. See Act of 1886 No. 98, section 28; Session Acts. page 144; Revised Statutes of the United States, § 2701; Murray vs. Charleston, 96th United States Reports, page 432; State ex rel. DaPonte, 35 Ann. 601.

The intention of the Act of 1886 manifested by its express language, that in assessing shares of stock of banks and financial institutions prominent in the legislative contemplation, non-taxable bonds, i. e- United States, State and City bonds are to be deducted, is fortified by the well known fact, presumably known to the legislator, that save and except such tax and exempted bonds, no other non-taxable property is ordinarily owned or susceptible of being part of the capital of financial corporations, hence the deduction of "all exempt property," required by the Act, in assessing shares of capital of financial corporations must, be deemed to refer to Federal, State and City bonds as the only "exempt property" ordinarily part or capable of forming part of the capital of such moneyed corporations.

The Revenue Acts since 1878, when the taxation of shares of stock was introduced in Louisiana, one and all directing the deduction in assessing the shares of banks and money corporations or all "exempt property," have been construed by the revenue officials, and by all, to mean the deduction of United States, State and City bonds; hence it must be the conclusion that the Legislature, in the various Acts upon the subject, of 1880, 1882, 1886 and 1888, have used the words "all exempt property" in their universally received significance, that is, the deduction of all non-taxable Federal, State and City bonds, part of the capital of such corporations. See Act 1878, p. 229, § 1, par. 8; Act 1880, p. 102, § 48; Act 1882, p. 128, § 28; Act 1886, p. 134, § 28; Act 1888, p. 123, § 27.

### *Leovy & Blair,* and *Farrar, Jonas & Kruttschnitt.*

### *Walter H. Rogers,* Attorney General, and *J. Henry Shepherd,* District Attorney, for Defendants and Appellees:

National banks organized under Acts of Congress are subject to State legislation, except where such legislation is in conflict with some Acts of Congress, or where it tends to impair or destroy the utility of such banks as agents and instrumentalities of the United States, or interferes with the purposes of their creation. Waite vs. Dowley, 4 Otto, 532.

The State has the right to tax the shares of National banks, organized under the Banking Act of 1864, of the United States, in the hands of the shareholders, regardless of the investment of the whole capital of such banks in non-taxable National securities, declared to be exempt from taxation by or under State authority. Section 21 U. S. Rev. Statutes, 138-162; Allan vs. The Assessors, 3 Wall 573; The People vs. The Commissioners, 4 Wall 244; National Bank vs. The Commonwealth, 9 Wall 353.

Exemptions from taxation are not favored and must be strictly construed. Desty on Taxation, pages 80, 132. 133, 135; 32 Ann. 104; 33 Ann. 622; 34 Ann. 574; 35 Ann. 668.

Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and all property shall be taxed in proportion to its value. Const. 1879, Art. 203.

Section 40, Act 98, Acts of 1885, provides that on all taxes unpaid on the 31st day of December of each and every year shall bear interest at the rate of 2 per cent per month from said date.

*Land & Land* on the same side:

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The Bank and the stockholders join to obtain a reduction of the assessment put on the shares for the year 1887.

From a judgment rejecting their demand they prosecute this appeal.

In May, 1887, the Bank returned to the assessor a statement showing the valuation of the capital stock to be $200,000, deducting therefrom the amounts then invested in United States bonds, $146,593 75, and in State bonds, $27,637 50, aggregating $174,231 25, leaving a difference of $25,768 75, as representing the value of the shares, which had been assessed at $100,000.

The Bank does not contend for the exemption of the shares, but insists that the Legislature having determined and directed the manner in which the shares of banking associations should be assessed to arrive at their value, and the assessment having been made in disregard of the method or process indicated, the assessment made ought to be rectified, and made pursuant to the mode prescribed by the law making power and which is contained in Section 28 of Act 98 of 1886.

Practically, the contention is that, taking the cash value of the shares to be $200,000, they ought not to be assessed at even half of that sum, because part of the capital of the bank having been invested in *exempt property* (United States and State bonds), the amount of the investments ought to be deducted from the value of the shares, and that, by this operation, the assessment ought to be of $25,768 75, and no more.

However true it be, that bonds or obligations of the United States are not taxable and that their taxation does not depend upon the constitutional provisions of the different States of the Union, it is conceded, as a matter beyond the domain of discussion, "that *shares* in banks, whether State or National, are liable to taxation by a State, although the capital of the bank may be entirely invested in United States bonds."

Indeed, clearly to that effect are the Federal statutes and the jurisprudence on the subject.   U. S. Rev. Statutes, Sec. 5219; 3 Wall 573; 4 Wall 244; 9 Wall 353; 23 Wall 480; 95 U. S. 19; 100 U. S. 539; and Mercantile Bank vs. New York, 1886, 121 U. S., pp. 145–162, in which anterior jurisprudence is reviewed.

The solitary question presented in this controversy, is, therefore, simply:

Whether the shares of the stockholders have, or not, been assessed in the *manner* pointed out by the act of 1886.

The section relied upon, which it is unnecessary to transcribe at length, directs that no assessment shall be made of the *capital* of a National or other bank, whose capital is represented by shares; but that the shares shall be assessed to the stockholders, and that "all property owned by the bank  *  *  *  which is taxable under Section 1 of this act, shall be assessed directly to the bank  *  *  *  and the pro rata of such direct property taxes and of all exempt property, proportioned to each share of capital stock, shall be deducted from the amount of taxes assessed to that share, under this section."

The contention is, that, under the terms of this law, all the *exempt property* of the bank should be deducted from the evaluation of the shares, and that, if this be done, as the United States and State bonds are *exempt property*, they should be counted out and the shares assessed at the difference only.

The question hence arises: What is the meaning of the words "*all exempt property*," found in the statute?

Two things are quite clear: First, that the power of the State to tax the shares, though the capital be invested in United States bonds, is formally recognized by Federal jurisprudence; and, second, that the legislative intent was to tax such shares, though the capital was thus invested.

It cannot be that the language used means all property exempt by Federal or State provision, for the plain reason that if it thus meant, the whole capital of the bank could be invested in such exempt property, and the consequence would be that the bank would have no cash on hand wherewith to transact its hourly financial operations, and that the shares, which the Federal law and jurisprudence allow to be taxed, and the State intended to tax, would escape all taxation whatever, however much their value might exceed that of the capital invested. This would be writing out the statute entirely.

The conclusion is, therefore, unavoidable that the words mean, all exempt property which do not form part of the capital of a bank represented by shares, and that it is a matter of no significance whether the capital was or not invested, or how it was invested, as the assessment complained of is neither of the *bond*, nor of the *capital*, but simply of the *shares* by which that capital is represented.

It is, nevertheless, insisted that the State bonds in which part of the

capital has been invested are exempt from taxation by State authority and that the amount invested in them should be deducted from the assessment of the shares, which was of 50 per cent. of their admitted market value, say : $100,000.

Granting that State bonds are as much exempt as United States bonds, when not constituting, in whole or in part, the capital of a banking institution, represented by shares, it is evident that, when they constitute, to any extent, such capital, the shares which represent the capital, may be assesessed at their market value, without any deduction from the assessment of the value of such bonds.

Hence it follows that neither the United States bonds, nor the State bonds, in which the capital of the bank was invested, had to be deducted from the assessment put upon the shares.

For those reasons, and those assigned by Mr. Justice Poché, it is ordered that the judgment appealed from be affirmed with costs.

[Mr. Justice Fenner, absent during the argument at Shreveport, takes no part.]

### CONCURRING OPINION.

POCHÉ, J.   The Bank and the intervening shareholders seek to reduce the assessment of the two thousand shares of paid up stock from $100,000 to $25,768 75.   The par value of each share is $100, and the rate of assessment was 50 per cent of such face value.

The complaint is that the taxable value of the shares should have been determined by deducting from the aggregate par value of the two thousand shares the amount shown to have been invested by the bank, at the date of listing, in securities exempt from taxation, according to existing laws, and consisting of United States bonds amounting to $146,593 75, and of Louisiana State bonds amounting to $27,637 50, footing up together $174,231 25, alleged to be exempt from taxation, and as such to be deducted from $200,000, thus leaving as the taxable value of the shares the sum of $25,768 75.

They are appellants from a judgment which maintained the assessment at $100,000.

The prominent fact in this case, and which must be borne in mind throughout the whole discussion, is that there is no question of assessing the capital stock or any other property of the bank as a corporation (which owns no taxable property whatever), but the purpose of the assessing authorities is merely to reach the taxable property of the indi-

vidual shareholders, as represented by investments in shares of stock of the bank.

For the purposes of this case, it is immaterial to consider in what kind of securities the capital stock of the bank is invested, even though it be shown that it is actually invested in United States bonds, instead of being represented by mortgage notes, call loans or other values usually characterizing banking operations.

Practically, this proposition is not contested by plaintiffs' counsel, who say in their brief: "It is conceded that shares in banks, whether State or National, are liable to taxation by the State, although the capital of the bank may be entirely invested in United States bonds."

The doctrine is too well settled by the jurisprudence of the country to be questioned at this day. Van Allen vs. Assessors, 3 Wal. 573; People vs. Commissioners, 4 Wall. 244; Bank vs. Commonwealth, 9 Wal. 353; Revised Statutes United States, Section 219.

It is, therefore, conceded as the law that the value of shares in this bank is liable to taxation by the State, and the only issue in the case is as to the mode of ascertaining their taxable value.

The contention, therefore, hinges upon the proper construction of Section 28 of Act No. 98 of 1886, which is the law directing the manner of assessing shares in banks. That statute first provides that no assessment shall be made upon the capital stock of any bank, when the same is represented by shares, but that the actual shares shall be assessed to the shareholders, imposing the duty on the bank to pay the taxes thus assessed, with the right of collecting the same from the shareholders. It then contains the following direction:

"All property owned by the bank, company, firm, association or corporation, which is taxable under Section 1 of this Act, shall be assessed directly to the bank, company, firm, association or corporation, and the pro rata of such direct property taxes, and of all exempt property, proportionate to each share of capital stock, shall be deducted from the amount of taxes assessed to that share under this section."

The crucial point in the case is to ascertain the precise meaning of the language which requires the deduction of all exempt property.

Plaintiffs' contention is that the Legislature intended to include therein bonds of the United States and of this State.

This is the error which has given rise to the whole controversy.

It must be noted that nothing in that section, or in the entire Act, indicates the slightest intention to subject either of those securities to taxation, or even to provide for their exemption. The lawmaker knew full well that both subjects were beyond his reach. He knew that, under

the paramount law of the land, United States bonds were not taxable, and that under the decision of this Court, in State ex rel. DaPonte vs. Board, 35 Ann. 657, State bonds were entitled to the same immunity.

What then did he mean to refer to?

The question is answered by the first section of the Act, which levies a tax on "the assessed valuation of all property situated within the State of Louisiana, except such as is *expressly exempted* from taxation by the Constitution." [Italics are mine.]

Turning to Article 207 of the Constitution, which is the law of exemptions, it appears that these securities are not therein enumerated, hence it follows that they are not in terms or *expressly exempted* from taxation by the Constitution. It is, therefore, clear that they were not within the contemplation of the law-giver in the section under discussion, as an element of deduction from the par value of shares in banks. To allow the deduction directed in the section was a pure gratuity on the part of the State. The Legislature had the undoubted power to simply assess the shares in banks without reference to the property which might be owned by the banks, and which was actually assessed in their names, or which might be exempt under the Constitution. The deduction ordered in the section was an act of fairness, intended to lighten the burden of the shareholders; it cannot be strained beyond the limits traced by the law itself.

Nothing in the law, as thus construed, can be tortured into an implied intention or indirect mode on the part of the Legislature to tax the bonds in which the capital stock of the bank may be invested. By the very terms of the statute the capital itself is not taxed, hence the securities which may represent it in the vaults of the bank are not taxed either. It is in proof that the bank itself is not assessed for any property whatever.

The true meaning of the statute, as applied to this case, is to determine the taxable value of the shares, by deducting such parts of the capital stock of the bank as may be invested in property which is *exempt from taxation* by the State Constitution. The record shows that the bank owns no such property, hence no deduction was due or could be claimed.

Therefore the valuation of said shares at 50 per cent of their face value was not in contravention of law.

I, therefore, concur in the decree.

The Chief Justice and Justices Watkins and McEnery concur in this opinion.

## ON APPLICATION FOR REHEARING.

FENNER, J.   The question involved in this case is so narrow that the various briefs, filed by able counsel of different banking institutions interested in the result, have accomplished nothing but the presentation of the same views in different form and order.

Recognizing the magnitude of the interests involved, we have given the whole subject an attentive reconsideration.

We do not see how we could reach a different conclusion from that announced in our original opinion without attributing to the Legislature an intention to do that which, under the Constitution, it has no power to do.

Reduced to its last analysis, the contention is that a large part of the value of the shares belonging to the individual shareholders of the bank is exempt from taxation; for though the question assumes the form of a question of assessment, it would be a self-evident quibble to say that there can be any difference between an exemption from assessment and an exemption from taxation.

We read in the Constitution the unequivocal mandates: 1. That "all property shall be taxed in proportion to its value, to be ascertained as directed by law." 2. That "the following property shall be exempt, and no other."

Bank shares are property. They are subject to taxation, and, in this statute, the Legislature has affirmatively exercised the power of taxing them. It is not disputed that the value of these shares, as ascertained by law, exceeds the value at which they have been assessed. It is simply claimed that a portion of this value is exempted from assessment and consequently from taxation. The claim is that, after ascertaining the value of the shares, the value of the United States and State bonds held by the bank, is to be deducted from that valuation, and that the shares are to be taxed, not according to their value, but according to a fraction of their value, as thus reduced.

The question naturally arises:   Whence would the Legislature derive the power thus to disobey the constitutional mandate that "property shall be taxed according to its value" and to exempt this large part of the "ascertained value" of these shares from taxation?

If anything can be settled by jurisprudence, it is settled in this State that the Legislature is absolutely stripped of power to exempt any property or value from taxation, and that when such exemption is claimed, it can be supported only by some provision found in the paramount law. State ex rel. Da Ponte vs. Board, 35 Ann. 654; La. Cotton Mf'g Co. vs.

City, 31 Ann. 443; City vs. Lafayette, 28 Ann. 756; City vs. St. Patrick's, 28 Ann. 512; City vs. St. Charles, 28 Ann. 498; 27 Ann. 276, 646, 648.

The dilemma is perfect: Either the exemption claimed is made by the paramount law or the Legislature has no power to make it.

We are thus brought to the necessary inquiry whether those provisions of the laws of the United States or of the Constitution of the State, which exempt bonds of the United States and of the State from taxation, require or authorize the exemption of any part of the value of shares of stock in banks holding such securities.

So far as the laws of the United States are concerned the Supreme Court of the United States has distinctly and repeatedly answered the foregoing inquiry in the negative, and has held that shares in banks, whether State or National, are liable to taxation by the State at their value, without regard to the fact that the capital of such bank is invested in bonds of the United States. Van Allen vs. Assessors, 3 Wall. 573; People vs. Commissioners, 4 Wall. 244; and several other cases which are cited and reviewed in Mercantile Bank vs. New York, 121 U. S. 145.

These decisions are based upon the legal distinctions which exist between shares of stock in a bank and the capital of the bank, both in their respective characters as property, and also in their ownership.

The Court said: "The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal. * * * The interest of the shareholder is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him, and of course is subject to like taxation."

State bonds fall under the control of the same principles. It would be impossible to formulate any theory under which an exemption would attach to the shares because the capital of the bank was invested in State bonds, which would not apply in case the investment was in United States bonds.

It, therefore, clearly appears that the value of the shares now in controversy, which the plaintiff claims the Legislature has exempted from assessment and taxation, is not exempt under the paramount law of either the State or the United States.

If any additional reasons were required to support those lucidly expressed in the original opinions, this would be alone sufficient.

The principles applying to the exercise of the power of taxation over the capital, the capital stock and the shares of corporation, are amongst the most intricate in that branch of jurisprudence. Authorities differ

as to whether the whole capital and shares can both be taxed. It is generally agreed that the taxing-power may be exercised over either without touching the other, and that when a part of the property of the bank has been actually taxed in the hands of the bank it may be deducted from the valuation of the shares when they are also taxed, on the principle of avoiding indirect duplicate taxation. But the right to avoid duplicate taxation by no means includes the right to grant duplicate exemptions. Exemptions are strictly construed, and are, in this State, the creatures of paramount law alone. When the Legislature deals with an object of taxation, it can exempt no part of its ascertained value not exempted by paramount law, though it may abstain from taxing a value which it considers to have been already taxed in different form.

The consideration that this will prevent banks from investing their capital in public securities is surely one with which this court cannot deal; nor can we consider another suggestion that those banks which have so invested their capital under the belief, based on the previous practice of taxing officers, that such value would be safe from taxation levied even on the shares of stockholders, will suffer loss. The question presented to us for determination is whether the paramount law authorizes the exemption claimed. To determine what is the paramount law and to construe and apply it is the highest function assigned to this court. If we suffer ourselves to be controlled in such determination by the errors and mistakes of others, it would be a virtual abdication of this function.

There can be no question that the tax from which exemption is claimed is not a tax on the capital of the bank, but it is a tax on the shares; because the statute expressly declares: "That no assessment shall hereafter be made under that name as the capital stock of  *  * any corporation, etc., whose capital stock is represented by shares, but *the actual shares shall be assessed to the shareholders, etc.*"

This is the assessment from which it is claimed that the exemption should be granted, and finding that the paramount law does not require or authorize such exemption, we are bound to hold that the Legislature had no power to make it.

No stronger reason could exist for adhering to our former interpretation of the statute, that the Legislature did not intend such exemption.

Rehearing refused.