**WARREN COUNTY, MISS. v. HES-
TER et al. (two cases).**

Civ. A. Nos. 3112, 3502.

United States District Court
W. D. Louisiana, Monroe Division.

May 2, 1952.

Vollor, Teller & Biedenharn, Vicksburg,
Miss., Taylor, Porter, Brooks, Fuller &
Phillips, Baton Rouge, La., for plaintiffs.

Hudson, Potts, Bernstein & Davenport,
Monroe, La., Thompson L. Clarke, St.
Joseph, La., for defendant.

DAWKINS, Chief Judge.

In these suits, complainant seeks to re-
cover ad valorem taxes paid under protest
upon a combination highway and railroad
bridge across the Mississippi River at
Vicksburg, which it acquired by purchase
from the former private owners in 1947;
and, in the alternative, it alleges that the
assessment should be not more than one
million dollars, on the ground that the value
fixed by the Louisiana authorities is ex-
cessive and discriminatory when compared
to those of other taxpayers, and that it
have judgment for the excess above what
it would be on the value alleged. The com-
plaints cover, respectively, the taxes paid
for the years 1950 and 1951.

On February 1, 1951, defendants moved,
in one document, to dismiss the complaint
for want of jurisdiction, failure to state a
claim for relief, and pleaded prescription
and res judicata. On December 27 follow-
ing, similar pleas were filed, to which were
added estoppel, a motion to strike and a
prayer for summary judgment.

Thereafter, on November 2, 1951, plain-
tiff filed an amended complaint; and on
January 23, 1952, it also moved for sum-
mary judgment.

Similar suits had been previously filed in
this court for recovery of taxes paid for the
years 1948 and 1949. At the time, there

were also pending in the State court for Madison Parish, Louisiana, identical suits. Those in this court for the earlier years were, by agreement, held in abeyance until final determination by the Louisiana Supreme Court of the claim to the exemption claimed by Warren County. It was based upon the contention that the bridge was public property, within the general conception of that term, and especially within the meaning of the Louisiana Constitution and Statutes, and hence not subject to taxation. The State Supreme Court rejected the claim to exemption. See Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12, 14. The 1948 and 1949 cases in this court were disposed of on basis of that decision.

In those cases, the Police Jury, the School Board of Madison Parish, Louisiana, and the Fifth Louisiana Levee District, also domiciled in said parish, intervened and became parties to the litigation. In the present cases, they were all made defendants by the complaint. The relief sought in all instances was a judicial declaration that the complainant's bridge was exempt from taxation, and that it should recover amounts paid under protest, with interest. Alternatively, complainant sought a reduction in the assessments.

■ The State Supreme Court, before beginning a discussion of the issues, said:

"After examination and study of the pleadings, the issues and the voluminous and comprehensive briefs submitted by opposing counsel, we think it apt to observe, at the outset, that, whereas numerous contentions, counter-contentions and other arguments have been presented in various forms and aspects, the questions for determination are relatively simple and involve purely matters of law, the salient facts of the case having been stipulated."

There, of course, the disposition was upon a complete record, after a trial on the merits. The issues in the present instance have been submitted upon pleadings, exhibits and ex parte affidavits, plus the legal effects of the decision of the State court. There, as here, "The pivotal question is whether the Vicksburg bridge is free from taxation under Section 4 of Article 10 of our Constitution", or the contention that it is in reality public property. As was said by Justice McCaleb, it seems unnecessary to enter an extended discussion of the many contentions and arguments of opposing counsel. The principal ground for the claim that the court should not feel itself bound by the decision of the State court and should, therefore, explore the matter anew, is that "it has the power and authority and duty to determine the facts for itself". This has reference to the contention that the bridge is public property. It is said that although the State court recognized the general rule that property owned by a state or its subdivisions, as well as that clearly dedicated to public use, is not subject to taxation, it "denied the plaintiff the equal protection of these admitted laws by factually concluding under the pleadings and facts existing in the year 1948, that plaintiff did not then come within the rule." Complainant admits that "this court is bound by the State Supreme Court's enunciation of the law, but it is requested to determine whether by a mere finding of fact, the plaintiff has been deprived of its rights under the Fourteenth Amendment". Complainant cites Davis v. Wechsler, 262 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143, Tulane Educational Fund v. Board of Assessors, 38 La.Ann. 292, and Martin v. Louisiana Central Lumber Co., 150 La. 157, 90 So. 553. I am in accord with the rulings in the cited cases. As an illustration, if either the stipulated facts upon which the matter was submitted to the State court, or those proven in any other case, it clearly appeared that all of the elements to support the claim of exemption as public property were present, this court would not be bound by the mere conclusion of the State court to the contrary.

■ The contention of complainant first considered by the State court, was that the expression "all public property" exempted by the State Constitution included that belonging to a sister state or its subdivisions. This was decided adversely to that contention, and, of course, a Federal

court is bound by the interpretation of the State's Constitution by its court of last resort. The following is quoted from the opinion of the State Supreme Court:

"* * * it is manifest that, if the Vicksburg bridge was dedicated to the public use by plaintiff after its acquisition in 1947, the property became constitutionally exempt from taxes for the year 1948. But the flaw in plaintiff's position is that the facts do not sustain the conclusion sought. The stipulation of facts merely exhibits that it is not plaintiff's objective to operate the bridge for profit; that it is its present intention 'as soon as the indebtedness of said bridge is retired or sufficiently reduced so that payment can be otherwise assured from other revenues', to abolish the toll charges as to privately owned and operated highway passenger carrying vehicles but not 'as to commercial or common carrier vehicles, railroad cars, pipelines, telegraph and telephone wires and cables or as to any other similar use'. Conceding, for purposes of discussion, that the eventual abolition of tolls on pleasure passenger vehicles will constitute an effective dedication of the structure for public use so as to place it within the constitutional exemption, it is difficult to perceive how plaintiff's intention can be regarded as a consecration of the property to public use. If the revenues derived from the tolls of the bridge were being used exclusively for its maintenance and economic operation, it might be reasonable to rule that there has been a dedication. But those are not the facts of the case. Actually, plaintiff is employing a substantial part of the revenue derived from tolls charged the general public to liquidate its obligation for the purchase price of the structure. Indeed, to hold that this bridge was dedicated to public use in 1948 merely because plaintiff evinces the intention of making it toll free at some future date, when the truth is that each and every person using it is required to pay, would be unrealistic, to say the least.

"Counsel nonetheless persist that the bridge should be declared tax exempt as public property because the Legislatures of Mississippi and Louisiana have declared that the ownership and operation of the structure by political subdivisions constitutes governmental functions—Mississippi by Chapter 283 of the Laws of 1938, which declares and proclaims that the properties of the bridge are not subject to taxation—and Louisiana by the enactment of a virtually identical statute in 1944 containing the same declarations and proclamations. LSA:RS 48:851 et seq.

"The answer to this postulation is evident. The Mississippi statute does not and could not exempt property situated in Louisiana from taxation by Louisiana and Act 287 of 1944 (the Louisiana statute) has application only to the acquisition of the bridge by a Louisiana parish and not by the county of an adjoining state. The pronouncements contained in these statutes, relative to the ownership and operations of the bridge constituting governmental functions, have application solely to the acquisition of the bridge by a local subdivision of the particular state and have absolutely no bearing on the questions of constitutional exemption from taxation.

"We therefore conclude that the judge correctly found that the bridge was not public property within the exemption specified in Paragraph 1 of Section 4 of Article 10 of the Constitution."

█ Plaintiff admits that the revenues of the bridge at this time are substantial and arise from tolls paid by all users of both that portion devoted to highway traffic and to railroad purposes. It is contended, however, that as soon as the revenue bonds issued in payment of the purchase price have been discharged, the intention is to make the highway side free to the public, except carriers of freight and passengers for hire. For this reason, it is said the present charges cannot be treated as income

or profit as in the case of a private investment. This must be considered in connection with the fact that, even at the present time, revenues from commercial use of the highway side which will be continued indefinitely, as well as appreciable sums collected from pipelines, telephone and telegraph companies for use of the bridge, when added to those received from the railroad, constitute about one-half of an annual total of approximately one million dollars, far in excess of what is necessary to pay the cost of upkeep and operation. It is suggested that this surplus may be used to relieve the tax burden in other directions, but solely in the State of Mississippi, in such manner as the governing authorities may determine. This would mean that although some three-fourths of the physical structure is in the State of Louisiana and would enjoy the protection of the Louisiana laws, no part of the cost thereof would be borne by the beneficiaries of such a course, but would rest entirely upon the taxpayers in this state. There will be time enough when and if a portion of the bridge is made free to the public to determine its effects or the extent to which it may become public property, as well as the effects thereof upon the claim to exemption to taxes in Louisiana. Clearly, that time has not yet arrived.

It is my view that the undisputed facts thus revealed amply support the conclusion reached by the Supreme Court of the State.

██ As to the alternative claim of over-evaluation, it is not believed that the record, as presented on the motions for summary judgment, is sufficiently clear to enable this court to determine whether there is any discrimination. It may be said, however, that property which produces a net revenue, after upkeep, depreciation and operation, said to amount to something between one-half and one million dollars annually, would not appear to be excessively valued at $3,150,000. It must be remembered that there are not many bridges in the State similar to this one to be used for comparison, and any attempt to test the issue by the use of other types of property or investments would not be an easy task.

After careful consideration of the claim that the State Supreme Court, while conceding the law to be as plaintiff contended, has, nevertheless, construed the undisputed facts in a manner to deprive it of the benefit of that law, I am unable to find justification for that contention.

Since both sides have moved for summary judgment upon the record here; there appears to be no need for the introduction of further evidence on the question of exemption and the demand of the complainant on that score should be rejected. On the issue of over-assessment, the demands for summary judgment on both sides will be denied and the matter referred to the merits.