481 So.2d 194 (1985)
STATE of Louisiana In the Interest of J.K.F.
No. CJ 85 0829.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Jerry L. Hermann, Houma, for defendant and appellant E.F.
James Galagan, New Orleans, for the minor child.
*195 Richard Brazan, Jr., Baton Rouge, for Department of Health & Human Resources.
Jackie Marce, Asst. Dist. Atty., Houma, for District Attorney's Office.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This is a suit by the State of Louisiana (State) to terminate the parental rights of a mother to one of her children. After a hearing, the trial court terminated the mother's parental rights to the child, declared the child eligible for adoption and ordered the State to furnish the court with a written plan for permanent placement of the child within ninety days after rendition of judgment. This suspensive appeal followed. La.R.S. 13:1604.

FACTS
On June 22, 1974, E.F. gave birth to J.K.F.[1] On or about October 8, 1974, E.F. gave the physical custody of J.K.F. to her aunt.
On or about September 2, 1975, J.K.F. was taken to the Charity Hospital in New Orleans and was subsequently diagnosed as having encephalitis or cerebral dysfunction due to hypoxia. On December 23, 1975, the trial court granted emergency protective custody of J.K.F. to the Division of Family Services of the Department of Health and Human Resources (DHHR). The affidavit filed to support this order alleged J.K.F. was in need of continued medical attention, E.F. was trying to take J.K.F. out of the hospital against the advice of the child's physician and the home situation for the child was unsuitable. The court ordered a hearing on these allegations on February 6, 1976. After the hearing, the trial court rendered judgment finding "the said child to be neglected" and ordered that J.K.F. "be removed from the custody of his parents ... and his custodians" and placed in the custody of DHHR. No appeal was taken from this judgment.[2]
The doctors treating J.K.F. recommended institutional care for him because he was in a nonresponsive condition. On April 22, 1976, J.K.F. was transported from the hospital to a nursing home in Avoyelles Parish. E.F. visited J.K.F. at the nursing home on November 23, 1976, December 15, 1976, and January 19, 1977. The evidence does not show any further visits by E.F. with J.K.F. until 1982. Apparently, in the interim, E.F. left the natural father of J.K.F. and commenced living with another man with whom she subsequently had four more children.
On February 10, 1982, Denise D. Fry, a foster care worker for the Division of Children, Youth and Family Services of DHHR, made contact with E.F. to discuss a permanent plan for J.K.F. It was the intention of DHHR at this time to see if E.F. and J.K.F. could be reunited. A team conference was held on April 29, 1982, at the nursing home and E.F. visited with J.K.F. Fry did a home study on E.F. and learned that E.F. lived with her male companion in a two bedroom trailer with their four children. The man was a shrimper but was frequently unemployed. The couple had no transportation and no telephone.
Fry initiated visitations between E.F. and J.K.F. on July 7, 1983, August 22, 1983, August 27, 1983, and December 20, 1983. In January of 1984, Rowena Marcel was designated as a foster care worker for J.K.F. On March 2, 1984, J.K.F. was placed in a foster home in Terrebonne Parish.
On May 10, 1984, the State filed a motion to review the status of J.K.F. A hearing was held on June 4, 1984, and the court determined it would not be appropriate to return the custody of J.K.F. to E.F. and that the best interest of the child would be served by maintaining custody in the State. However, the court noted that, before a *196 permanent plan could be implemented for the child, all medical records must be received and reviewed and, accordingly, ordered the nursing home to produce all of its records within forty-five days.
Fry initiated another visitation between E.F. and J.K.F. on May 14, 1984. On May 24, 1984, Fry held a team conference for E.F. to visit J.K.F. and to set up a visitation schedule. The purpose for the visitation schedule was to place on E.F. the active role of initiating visits and further develop the relationship between E.F. and J.K.F. The schedule called for visitations during the first and third weeks of each month. E.F. initiated visits on June 6, 1984, and June 21, 1984. For the June 21, 1984 meeting, Marcel brought J.K.F. to E.F.'s home. Since June 22 was J.K.F.'s birthday, E.F. asked if she could buy a gift and go to J.K.F.'s birthday party at his foster home. Permission was granted, but E.F. did not get a gift or go to the party.
E.F. did not initiate visits in July or August of 1984. Fry saw E.F. on August 16, 1984, and E.F. advised her that she had been too busy to visit. Fry initiated a team conference on August 23, 1984, and E.F. had a visit with J.K.F. at that time. Fry left DHHR in September of 1984.
In October of 1984, Wendy McCoy, a family service worker with the Division of Children, Youth and Family Services, started working with E.F. McCoy initiated a family team conference on November 19, 1984, concerning J.K.F. and three of E.F.'s other four children who had just come into the care of DHHR (these three children were still under the care of DHHR at the time of the trial on March 14, 1985). At this team conference, E.F. did not discuss J.K.F. or ask to visit with him. Thereafter, McCoy kept regular contact with E.F., but E.F. requested no visits with J.K.F. McCoy discussed surrendering parental rights in J.K.F. with E.F., and E.F. agreed to come to McCoy's office on December 20, 1984, and sign a release form. E.F. came in on that date but refused to sign because she felt the surrender of J.K.F. would hurt her chances of getting her three other children back.
Nancy S. Rumage was qualified as an expert witness in psychology and testified she saw J.K.F. on March 13, 1984, and August 6, 1984. J.K.F. was given psychological and neuropsychological evaluations. These tests showed he was moderately retarded and had an IQ of 40. His personality was immature, impulsive, anxious and insecure. He had difficulty in controlling his anger, could not learn from experience (trial and error) and could not process visually presented material. Rumage also noted that J.K.F.'s speech was slurred.
This suit was filed on January 22, 1985.

SUFFICIENCY OF EVIDENCE
E.F. asserts the trial court was clearly wrong in finding the State met its burden of proof in establishing that E.F. was an unfit parent. The State responds that it has properly proven its case under La.R.S. 13:1601(B) and (D).
The pertinent portions of La.R.S. 13:1601(B) and (D) are as follows:
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.
. . . .
B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.

*197 (2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.
. . . .
D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents.
[Emphasis added].
In addition, La.R.S. 13:1602(D) provides as follows:
The district attorney or the appointed attorney for the child must prove that the child has been abused or neglected or the other elements enumerated in R.S. 13:1601 exist, and that the best interest of the child dictates termination of parental rights.

[Emphasis added].
The State bears the burden of proving the elements of its case by clear and convincing evidence. La.R.S. 13:1603(A); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State in the Interest of Wisham, 452 So.2d 366 (La. App. 1st Cir.1984). Clear and convincing evidence is more than a preponderance but less than beyond a reasonable doubt. Succession of Riggio, 468 So.2d 1279 (La.App. 1st Cir.1985), writ denied, 472 So.2d 33 (La.1985) and the cases cited therein.
Proof that the parent is unfit is a common element of La.R.S. 13:1601(B) and (D). Unfit is legislatively defined in La.R.S. 13:1600(6) as follows:
"Unfit" refers to a parent who has abused the child by inflicting physical or mental injury which causes severe deterioration to the child, including a child who has been abused sexually, exploited or overworked to such an extent that his health, moral, or emotional well-being is endangered; or refers to a parent who has, although financially able to do so, consistently refused to provide reasonably necessary food, clothing, shelter, or medical service.
The evidence of record does not show E.F. abused J.K.F. by inflicting physical or mental injury which caused severe deterioration to him or that E.F. has consistently refused to provide reasonably necessary food, clothing, shelter or medical service to J.K.F., although she was financially able to do so. Indeed, the evidence indicates E.F. does not have the financial ability to provide for J.K.F. Financial inability to provide necessities for a child is not proscribed by La.R.S. 13:1600(6). Very simply, the facts of this case do not come within the purview of the definition of unfit in the statute. Compare State in the Interest of a Minor Male Child, 461 So.2d 1278 (La.App. 1st Cir.1984) and State in the Interest of a Minor, 446 So.2d 1385 (La.App. 3rd Cir.1984) with State in the Interest of M.B., 460 So.2d 1181 (La.App. 2nd Cir.1984).
This assignment of error has merit.[3]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed.[4] No costs shall be assessed against the State. La. R.S. 13:4521.
REVERSED.
NOTES
[1] On motion of the State, this court ordered that the names of the child and the mother be disguised.
[2] The parents, custodians and child were represented by counsel.
[3] Because we find merit to the first assignment of error, it is not necessary to rule on the three remaining assigned errors.
[4] Our judgment reversing the termination of parental rights does not affect the custody judgment in favor of the State.