LANIER, Judge.
This action is a suit by the 21st Judicial District Court (21st JDC) against the State of Louisiana, the Governor, the President of the Senate, the Speaker of the House of Representatives, the Tangipahoa Parish Council and its President, the Judicial Budgetary Control Board and the Louisiana Supreme Court. The 21st JDC seeks (1) a declaratory judgment that the statutes which require local governments (the Tan-gipahoa Parish Council) to fund part of the district court’s operating expenses (La.R.S. 13:961[E] and 33:4713), are an unconstitutional delegation of the State’s obligation to fund the judicial branch of state government, and (2) an appropriate writ of mandamus to compel the State to provide the necessary and essential funding for the 21st JDC. The Judge of the Seventh Ward Court of Tangipahoa Parish (City Court of Hammond), hereinafter referred to as the City Judge, intervened on the side of the 21st JDC. Declinatory, dilatory and peremptory exceptions were filed by various' parties defendant. The trial court referred all exceptions to the merits.[1] The trial *1187 court rendered judgment denying the relief requested by the plaintiffs. In reasons for judgment, the trial court ruled the plaintiffs were not entitled to mandamus because (1) the legislative branch of State government has discretion to determine how the branches of State government shall be funded and (2) the financial circumstances of Tangipahoa Parish “are not such that the Courts cannot function as they have in the past”. The trial court also ruled the plaintiffs were not entitled to declaratory relief because they “have failed to show a justiciable controversy” and “a judgment or decree would not terminate the uncertainty or controversy giving rise to these proceedings.”- The 21st JDC and the City Judge took this appeal.[2]
FACTS
The parishes of Tangipahoa, Livingston and St. Helena compose the Twenty-First Judicial District. La.R.S. 13:477. The 21st JDC has six judges. La.R.S. 13:621.21. As a district court, it has original jurisdiction over civil, juvenile and criminal matters. La.Const. of 1974, art. Y, §§ 16 and 19; La.C.J.P. art. 14(B). The current scheme for funding the operations of the 21st JDC is comprised of (1) state funds, (2) special funds (such as the Criminal Court Fund, La.R.S. 15:571.11, and the Judicial Expense Fund, La.R.S. 13:996.6 and 996.7) and (3) local government funds. The payment of local government funds are mandated by La.R.S. 13:961(E) and 33:4713. La.R.S. 13:961(E) provides as follows:
Each of the official court reporters provided for in R.S. 13:961A, shall receive a monthly salary to be fixed and determined by the judge making the appointment. The salaries shall be paid out of the general fund of the parish or parishes comprising the judicial district for which the appointment is made. In districts which comprise more than one parish the amount to be paid by each of the parishes comprising the district is to be in the proportion that the assessed value of each parish bears to the total assessed value of all the parishes comprising the district. The police jury of each parish shall budget the salary or the pro rata part of its share of the salary of the official court reporters in its budget of annual expenses.
La.R.S. 33:4713 provides as follows:
Each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices and shall provide such other offices as may be needed by the sheriffs of these courts and by the tax collectors and assessors of the parish and shall *1188 provide the necessary heat and illumination therefor.
The cost of such furniture and equipment, supplies and maps, as may be needed by the tax collector and assessors of each parish shall be borne proportionately by all tax recipient bodies in the parish in the proportion of the amount received from such tax monies by each recipient body in the parish.
The police jury or other governing authority shall make these purchases and then bill the other tax recipients for their proportionate share.
Further, La.R.S. 33:2922(A) provides, in pertinent part, as follows:
The annual revenues of any political subdivision (which term shall mean those units of local government listed in Subsection 2 of Section 44 of Article VI of the Louisiana Constitution of 1974) shall be dedicated as follows: first, all statutory charges shall be paid from the respective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary and usual charges provided for by ordinance or resolution.
The Seventh Ward Court has territorial jurisdiction throughout the City of Hammond and the Tangipahoa Parish wards (apparently 6th and 7th) wherein the City of Hammond is located. La.R.S. 13:1952(10). The Seventh Ward Court has original jurisdiction over civil, juvenile and criminal matters within the limits provided by law. La.R.S. 13:1891; La.C.C.P. art. 4831 et seq.; La.R.S. 13:1894; La.C.J.P. art. 14(D). The current scheme for funding the operations of the Seventh Ward Court is comprised of: (1) state funds, (2) Tangipa-hoa Parish funds and (3) City of Hammond funds. La.R.S. 13:1874, 1883, 1888, 1889 and 1899(C).
CONSTITUTIONALITY OF THE PRESENT FUNDING SCHEMES FOR THE 21ST JDC AND THE SEVENTH WARD COURT
The 21st JDC asserts the legislature’s present method of funding the district court is unconstitutional for the following reasons:
1. Statutes enacted by the legislature that place the burden of financing state district courts upon local governing authorities constitutes an unconstitutional delegation of legislative authority, duty and responsibilities.
2. Statutes enacted by the legislature that place the burden of financing state district court upon local governing authorities, if constitutional on their face, are unconstitutional in their application to the Twenty-First Judicial District Court.
3. The entire funding scheme for financing state district court operation, due to its lack of uniformity and its creation of a hodge-podge funding source is unconstitutional.
The City Judge also asserts these arguments.

Applicable Law

In Board of Directors of Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of State of Louisiana, 529 So.2d 384, 387-388 (La.1988) appears the following:
1. A person attacking the constitutionality of a statute of public purpose must show clearly the constitutional aim to deny the Legislature the power to enact the legislation.
The legislative power of the state is vested in the Legislature. La.Const. 1974, Art. Ill, § 1. Except as expressly provided by the constitution, no other branch of government, nor any persons holding office in one of them, may exercise the legislative power. La.Const. 1974, Art. II, §§ 1 and 2. Furthermore, it is a general principle of judicial interpretation that, unlike the federal constitution, a state constitution’s provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its Legislature. In its exercise of the entire legislative power of the state, the Legislature may enact any leg *1189 islation that the state constitution does not prohibit. Thus, to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the Legislature to enact such a stat-ute_ (“Except as limited by the constitution its power is plenary”); Swift v. State, 342 So.2d 191, 194 (La.1977) (“Unlike Congress, our State Legislature has all powers of legislation not specifically denied it by the Louisiana Constitution”).
Unless the fundamental rights, privileges and immunities of a person are involved, there is a strong presumption that the Legislature in adopting a statute has acted within its constitutional powers.... The presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to taxation and public finance.... The party attacking such a statute has the burden of showing clearly that the legislation is invalid or unconstitutional, and any doubt as to the legislation’s constitutionality must be resolved in its favor.... In an attack upon a legislative act as falling within an exception to the Legislature’s otherwise plenary power, it is not enough to show that the constitutionality is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact the statute.
(Some citations omitted)

Constitutionality Per Se

The appellants assert the statutory requirement of local government funding of the judicial branch of state government is an unconstitutional delegation of legislative authority.
This claim was answered in City of New Orleans v. State, 426 So.2d 1318 (La.1983). This was a suit brought by the City of New Orleans, a home rule unit of local government, which asserted that various statutes requiring it to fund State services were unconstitutional. Many of these statutes pertained to various elements of the judicial branch of state government in Orleans Parish, namely (1) the salaries of criers (bailiffs) for civil district court, La.R.S. 13:1302; (2) the salary of the clerk and deputy clerks of the criminal district court, La.R.S. 13:1371 and 1372;. (3) the salaries of the messengers of the criminal district court, La.R.S. 13:1374; (4) funding for a building and/or quarters for the criminal district and juvenile courts, La.R.S. 13:1383, 1568 and 1584; and (5) the salaries of the clerk, bailiff, stenographer and stenographic, clerical and other personnel of the juvenile court, La.R.S. 13:1587.1. In City of New Orleans, 426 So.2d at 1321-22 the Court observed as follows about the authority of the legislature to enact such laws:
Art. 6, § 9 of the Louisiana Constitution of 1974 entitled “Limitations of Local Governmental Subdivisions” provides in part (B):
“Notwithstanding any provision of this Article, the police power of the state shall never be abridged.”
This provision must be considered in connection with Section 6 of that Article, relied upon by the City. The autonomy of local governmental subdivisions with home rule charters is limited by general legislation enacted under the State’s police power.
The only restriction on the State’s power to enact legislation requiring the expenditure of funds by local political subdivisions is found in Art. 6, § 14, of the Louisiana Constitution of 1974, entitled “Increasing Financial Burden of Political Subdivision”,
[[Image here]]
The salaries involved here are being paid to State employees and not to City employees. Since the increased expenditures by the City are not for its “political subdivision employees”, the above limitation is inapplicable.
“... [I]n the absence of a particular constitutional provision that limits the power of the legislature to act in the respects assailed, a legislative action cannot be invalidated as contrary to the state’s constitution.” Hainkel v. Henry, 313 So.2d 577 at 579 (La., 1975). “Com- *1190 píete legislative power, except as limited by the Constitution, lies within the state legislature_” State ex rel Guste v. Legislative Budget Com., 347 So.2d 160 at 164 (La., 1977). The legislative acts mandating these payments by the City to the State’s employees and offices constitute a valid exercise of the State’s police power. The State functions which are partially funded by the City under the challenged acts provide significant services and benefits to the City. Hence, the fiscal burden imposed by the legislature on the City is equitably justifiable, as well as constitutional.
In a concurring opinion, Justice Dennis, who was Chairman of the Judiciary Committee of the Louisiana Constitutional Convention of 1973 (CC/73), observed as follows:
The statutes require the local government to subsidize functions of state government such as the administration of justice, law enforcement, assessment of taxes and voter registration. They do not interfere with the internal management of local government or with the compensation of its employees. Compare the statutes at issue to those found unconstitutional in LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir.1960) and Letellier v. Parish of Jefferson, 254 La. 1067, 229 So.2d 101 (1969). Moreover, the subjects of the statutes at issue here are matters of statewide concern rightfully amenable to regulation by the state within its police power. Article 6 § 9.
The appellants argue that giving local governments the power to fund the courts “affects” them, and, thus, violates La. Const, of 1974, art. VI, § 25. La.Const, of 1974, art. VI, § 25 provides as follows:
Notwithstanding any provision of this Article, courts and their officers may be established or affected only as provided in Article V of this constitution.
Initially, it must be noted that this provision is a limitation on Article VI of the Constitution which pertains to Local Government; it is not a limitation on Article III which provides for the Legislature, or Article V which provides for the Judiciary. Secondly, this provision must be construed in pari materia with Article VI, § 9 which provides that the police power of the State shall never be abridged. Finally, the records of CC/73 show that this provision was not intended to affect the legislature’s authority to order local government to fund the judicial branch.
Article VI, § 25 originated as a floor amendment by three members of the Judiciary Committee. Vol. I, Records of the Louisiana Constitutional Convention of 1973: Journal of Proceedings, September 26, 1973, p 528. The purpose of this provision was described by Delegate (now Justice) Dennis as follows:
Mr. Dennis Mr. Chairman, fellow delegates, I apologize for going back over the same arguments that we went over in the previous section. I thought that we had debated that, at that time, and that the convention had agreed to add these exceptions. In all due respect to Mr. Bollinger and Mr. Abraham, I do think that at this time, this amendment is necessary to make it clear that a local government cannot set up a court different from the courts authorized under the Judiciary Article. Now, perhaps, later on, we can restyle either the Judiciary Article or this article to make it clear that all of the courts are authorized under the Judiciary Article, but at this time, that is not clear for the reasons that I stated earlier. We said in the Judiciary Article that “The judicial power is vested in courts authorized by this constitution.” Now, in this article, you are authorizing local governments; query: does that include courts? I think that somebody might say it does, so I’m asking you to make it clear that it does not. Please adopt this amendment. It is just like the other amendment that we adopted last week pertaining to home rule charters. (Emphasis added)
Vol. VIL, Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, September 26, 1973, p 1432. Article VI, § 25 was discussed in L. Har-grave, The Judiciary Article of the Louisi *1191 ana Constitution of 1974, 37 La.L.Rev. 765, 767 (1977) as follows:
Article Y, Section 1 is the basic limiting provision: “The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article.” The section itself vests judicial power in the three named courts, thus preventing the legislature from divesting those courts of that power. The section also limits the legislature’s authority in that judicial power can be vested in no other courts than those “authorized by this Article. ” Since the only type of new court “authorized” is the parish court, the legislative power to establish new types of courts is severely curtailed.
The policy of curbing the legislative power over court structure and organization was reinforced in the Local Government Article through the adoption of a provision to ensure that local governments would have no power to establish or change courts. Article VI, Section 25 provides, “Notwithstanding any provision of this Article, courts and their officers may be established or affected only as provided in Article V of this constitution.” (Emphasis added) (footnotes omitted)
The statutes in question do not establish or change the 21st JDC or the Seventh Ward Court, nor do they divest those courts of the judicial power.
Further, the intent of the CC/73 can be ascertained from the fact that an attempt to require total state funding of the judiciary was rejected. The legislative scheme of requiring some local government funding of the judicial branch existed for many years prior to the 1974 Constitution. For example, the source of La.R.S. 33:4713 is Act 111 of 1880, and the source of La.R.S. 13:961 is Act 296 of 1948. Delegate proposal 34 at CC/73 provided as follows:
The total cost of the state judicial system shall be paid by the state from the general fund. The legislature may require reimbursement to the state by political subdivisions of appropriate portions of such cost. This provision shall not cause the reduction of the salary of any public official.
Yol. IV., Records of the Louisiana Constitutional Convention of 1973: Convention Instruments, p. 326. A form of this proposal was presented to the Judiciary Committee and rejected. Vol. XI., Records of the Louisiana Constitutional Convention of 1973: Committee Documents, August 9, 1973, pp. 276-277. A form of the proposal also was apparently presented to the Revenue, Finance and Taxation Committee and rejected. Finally, an attempt was made to bring the delegate proposal directly to the floor of the Convention. The convention transcript shows the delegates were fully aware that the existing scheme for financing the judiciary provided, in part, for local government funding. The Convention declined to consider the proposal by a vote of 34-50. Vol. II., Records of the Louisiana Constitutional Convention of 1973: Journal and Calendar, January 8, 1974, p. 1124; Vol. IX., Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, January 8, 1974, pp. 3182-3186. This demonstrates an intent of the Convention not to change this scheme for funding the judiciary.
Appellants have failed to show that it was the constitutional aim of La.Const. art. VI § 25 to deny the legislature the power to provide for local government funding of the judiciary. Therefore, the statutes being challenged are not unconstitutional per se.

Constitutionality as Applied

The appellants assert that local government funding of the judiciary leads to unequal treatment under the law because some local governments (such as Tangipahoa Parish) fund at a lower rate than' others. Further, they assert Act 348 of 1988 which appropriated funds to defray the expenses of the judiciary treats the 21st JDC unequally. They further assert that the citizens of Tangipahoa Parish are being deprived of due process of law, equal protection of the law, and equal access to the courts by this unequal treatment.
*1192 The plaintiff in the original petition is the 21st JDC. The plaintiff in the petition of intervention is the City Judge. Public agencies and persons acting in their public capacities are not “persons” for purposes of due process and equal protection guarantees under the Constitutions of the United States and Louisiana.[3] Warren County, Mississippi v. Hester, 219 La. 763, 54 So.2d 12 (1951); Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir.1974), writ denied, 307 So.2d 372 (La.1975); Penny v. Bowden, 199 So.2d 345 (La.App. 3rd Cir. 1967). This same rule is applicable by analogy to determine when a party is a “person” for purposes of access to the courts. The appellants have no standing or right of action to raise these claims.

Constitutionality of Nonunified System of Funding Judiciary

The appellants assert “Article V of the 1974 Constitution creates and establishes a unified three tiered system of courts”; “[T]his unified existence only breaks down in matters of finance”; Part 6, Section 4(d) of the General Administrative Rules of the Louisiana Supreme Court provides for a unified budget request for the judiciary; and that unified and equal funding “will never be accomplished as long as the current fragmented system of financing the district courts remains in existence.” They cite County of Allegheny v. Commonwealth, 517 Pa. 65, 534 A.2d 760 (1987) as authority for this position.
The flaw in this argument is that Article V of the Louisiana Constitution of 1974 does not establish a “unified” court system. In L. Hargrave, supra, at 777-778 appears the following:
As the foregoing has disclosed, the constitution continues the district court structure and does not adopt an integrated court system. Much discussion about an integrated court system was afield in the state as the Judiciary Committee began its deliberations. Institute of Judicial Administration studies had recommended bringing the courts of limited jurisdiction into the district court structure, thus establishing one level of trial courts. Representatives of the Institute of Court Management and the American Judicature Society, as well as prominent Louisiana attorneys, argued for the proposal in committee. But the committee was not disposed to change the judicial organization so drastically.
Particularly since a unified court system would have required drastic changes in the courts of Orleans Parish and since the interests of the Orleans incumbents were well represented, the committee was unable to amass the vote needed to propose a truly integrated court system. But, as is discussed in detail later, the document does allow the legislature to move in that direction by facilitating abolition of courts of limited jurisdiction.[59] Also, the constitutional provisions regulating the district courts are such that nothing prevents the legislature, the supreme court, or the district courts themselves from establishing specialized divisions within the district courts. Such divisions, with different procedures for juvenile matters, small claims, traffic cases, etc., are permissible. These would not be permanent separate courts with separate staffs, but parts of the one court with centralized staff and administrative control and one corps of judges who could move from division to division as needs arose and changed. In addition, the constitution nowhere requires a district court to sit in only one place, and branches of the district court throughout a district are permitted. Though the *1193 ideal of having one district court for the whole state with divisions sitting throughout the state is not possible, judges can be assigned throughout the state by the supreme court.
See also Vol. IX., Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, January 8, 1974, p 3183.
This argument is without merit.

Conclusion

The appellants have failed to show that the Legislature does not have the constitutional power to enact the present system for funding the judiciary in Louisiana.
This assignment of error is without merit.
RIGHT TO MANDAMUS
The City Judge asserts the trial court erred by denying his request for a writ of mandamus directing the State to fund the operation of the Seventh Ward Court.
Even though the City Judge has failed to show the unconstitutionality of the present funding scheme for his court, he may still have a claim for a writ of mandamus directing adequate funding by the State and/or local government if he can prove certain facts. In Konrad v. Jefferson Parish Council, 520 So.2d 393, 397-398 (La. 1988), appears the following:
La.Const. art. II, §§ 1 and 2 divide governmental power into three separate branches and provide that no one branch shall exercise powers belonging to the others. These sections establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge....
Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts. The doctrine is a corollary of the concepts of separation of powers and of judicial independence, in that other branches of government cannot, by denying resources or authority to the court, prevent the courts from carrying out their constitutional responsibilities as an independent branch of government.... The inherent power of the judiciary is a necessary concomitant to the judicial power, but pertains to the administration of the business of the court.
The doctrine of inherent powers has been utilized to provide the power to punish for contempt, ... to adopt rules of practice, ... to regulate lawyer admission to practice and lawyer discipline, ... and to require the appropriation or expenditure of funds reasonably necessary for the court’s functioning as a court, Lancaster County v. Brinthall, 29 Pa. 38 (1857); Note, Judicial Financial Autonomy and Inherent Power, 57 Cornell L.Rev. 975 (1972). The doctrine exists because it is essential to the survival of the judiciary as an independent branch of government....
Because there is some inevitable overlap of the functions, each branch of government must strive to maintain the separation of powers by not encroaching upon the power of the others. Consequently, the inherent powers of the judiciary should be used sparingly and only to the extent necessary to insure judicial independence and integrity. Imbornone v. Early, 401 So.2d 953 (La.1981) (Dennis J., dissenting on original hearing).
In Louisiana the doctrine has been used to stop traffic around the courthouse in Orleans Parish because the noise interrupted court proceedings, ... to regulate admission to the bar and define the practice of law, ... to require an *1194 attorney to represent an indigent, ... to establish standards governing the conduct of lawyers and to override statutes which tend to impede or frustrate this authority, ... to order the governing authority to budget reasonable funds for expenses necessarily incurred for the district court’s operation as a court, McCain v. Grant Parish Police Jury, 440 So.2d 1369 (La.App. 3rd Cir.1983); and to award a fee for the attorney, appointed by the court to represent an indigent natural parent in an abandonment proceeding, against the state agency which initiated the proceeding, ... (footnotes and some citations omitted)
See also City Court of Breaux Bridge v. Town of Breaux Bridge, 440 So.2d 1374 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1219 (La.1984).
The trial court found as fact that the City Judge was not entitled to a writ of mandamus because “[T]he relief sought is not needed at this time ...” Gordon Burgess, President of the Tangipahoa Parish Council, testified that the Seventh Ward Court was paid all sums due by the Parish, including the salaries of the City Judge and the court employees. He further testified that the City Marshal, by his own consent, was not paid for a period of time, but that he was eventually paid. Walter Parker, the Clerk of the Seventh Ward Court, testified that the Parish budgeted $48,300 for the court in 1988 and the court received that amount. In 1989, the court asked for $48,300 from the Parish but only received $32,200. This amount would fund the court through August of 1989. The Parish paid its share of the City Judge’s salary and paid the supplemental salaries of the Clerk and his deputies. The City Court had approximately $30,000 in funds available to make up any deficit in Parish funding. The trial court’s factual ruling was correct (not manifestly erroneous or clearly wrong).
This assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.[4]
AFFIRMED.

. A minute entry dated July 6, 1989, shows that all exceptions pending on that date were referred to the merits. The trial transcript and minute entry for August 14, 1989, show that prior to commencing the trial, counsel for the Louisiana Supreme Court and the Judicial Budgetary Control Board filed a declinatory exception raising the objection of lack of subject matter jurisdiction, a dilatory exception raising the objection of prematurity, and a peremptory exception raising the objection of no cause of action. These exceptions were tried at that time and the trial court overruled the declinatory exception, sustained the dilatory exception and declined to rule on the peremptory exception (apparently because it was then moot). A judgment sustaining a dilatory exception raising the objection of prematurity is a final judgment that must be in writing. La.C.C.P. arts. 933, 1911, 1912 and 1918; Brown v. Red River Parish School Board, 469 So.2d 1110 (La.App. 2nd Cir. 1985); Leger v. Delahoussaye, 464 So.2d 1 (La. App. 3rd Cir.1984); Butler v. Flint-Goodridge Hospital of Dillard University, 346 So.2d 1131 *1187 (La.App. 4th Cir.1977). The record before us does not have a written judgment which sustains the dilatory exception. However, the 21st JDC in brief, advises that it does not appeal the judgment dismissing the Louisiana Supreme Court and the Judicial Budgetary Control Board from the case.

. In brief, the 21st JDC and the City Judge indicate that the Louisiana Supreme Court, the Judicial Budgetary Control Board, the Tangipa-hoa Parish Council and the President of the Tangipahoa Parish Council are not parties to this appeal. Those parties have not appeared before this court or filed briefs. At the conclusion of the trial, the trial court judge orally indicated that he would not issue a writ of mandamus. Counsel for the Tangipahoa Parish President and Council indicated that his clients were parties to the mandamus proceedings but were not parties to the declaratory judgment proceedings. The trial court judge ordered a single judgment prepared on the mandamus issue. The only written, final judgment in the record provides in pertinent part, as follows:
Considering the above and foregoing Reasons for Judgment;
IT [sic] ORDERED, ADJUDGED AND DECREED that the Plaintiffs’ Petition for Mandamus and for Declaratory Judgment is hereby denied.
This judgment only denies the relief requested by the plaintiffs; it does not name the defendants in whose favor it runs. Compare Scott v. State, 525 So.2d 689 (La.App. 1st Cir.1988). In brief, the 21st JDC asserts it “appeals that portion of the judgment that denies its request for declaratory relief’ and states that it does not “appeal that portion of the judgment that has the effect of dismissing the defendants, Tangipa-hoa Parish Council and the President of the Council.” However, the City Judge assigns as error the trial court’s action in "Denying Plaintiffs Petition for Mandamus and for Declaratory Judgment."

. In their petitions, the 21st JDC and the City Judge assert they are not required to advance costs pursuant to La.R.S. 13:5112(B) which provides as follows:
In accordance with Section 10 of Article XII of the Constitution, neither the state nor any department, board, commission, agency, or political subdivision thereof shall be required to pay court costs, until the judgment rendered against the state, department, board, commission, agency, or political subdivision shall become final and definitive under the provisions of Articles 2166 and 2167 of the Code of Civil Procedure or otherwise nonappealable or nonreviewable beyond the delays set by law for same and the funds have been appropriated therefor in specific dollar amount. (Emphasis added)

 Judiciary Committee chairman James Dennis told the convention, “The basic idea here is to retain the present structure of the trial courts of original jurisdiction in the State of Louisiana, and to provide for a mechanism for the legislature to be able to change and reorganize the courts below the district level as time demands.” He added that the legislature could move to a three or four-tiered court system “that would be uniform and consistent throughout the state and would not be fragmented and specialized as it is today.” PROCEEDINGS, Aug. 17, 1973 at 2.
(some footnotes omitted)

. We do not assess costs because the plaintiffs-appellants are entitled, as public agencies, to prosecute this suit without paying costs. La. R.S. 13:4521 and 5112; Sales Tax District No. 1 of Parish of Lafourche v. Express Boat Company, Inc., 500 So.2d 364 (La. 1987); State in the Interest of BS v. PS, 542 So.2d 1163 (La.App. 2nd Cir.1989); State Department of Transportation and Development v. Keating, 541 So.2d 247 (La. App. 4th Cir.1989); State in the Interest of JML, 540 So.2d 1244 (La.App. 3rd Cir.1989); State in the Interest of JKF, 481 So.2d 194 (La.App. 1st Cir.1985).