**54 So.2d 12**
**WARREN COUNTY, MISSISSIPPI v. HESTER.**
**No. 40212.**

May 28, 1951.

Rehearing Denied June 29, 1951.

Writ of Certiorari Denied Nov. 13, 1951.
See 72 S.Ct. 167.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, Vollor, Teller & Biedenharn, Vicksburg, for plaintiff-appellant.

Fred G. Hudson, Jr., Monroe, Thompson L. Clarke, Dist. Atty., St. Joseph, Hudson, Potts, Bernstein & Davenport, Monroe, for defendant-intervenors.

McCALEB, Justice.

Proceeding under authority of Act 330 of 1938, LSA:RS 47:1575, 47:1576, 47:2110, Warren County, a political subdivision of the State of Mississippi, instituted this suit against C. E. Hester, Sheriff and Ex Officio Tax Collector of Madison Parish, Louisiana, to recover $43,129.75, representing taxes paid under protest for the year 1948, which were allegedly unlawfully assessed against its property. Soon after the filing of the suit, the Madison Parish police jury, its school board and the Board of Commissioners of the Fifth Louisiana Levee District intervened in the case, joining with the defendant tax collector in resistance of plaintiff's demand.

The taxes sought to be recovered were assessed against plaintiff by reason of its ownership of a combination highway and railway toll bridge spanning the Mississippi River, between the city of Vicksburg, Mississippi and the town of Delta in Madison Parish, Louisiana, the structure forming a link in U. S. Highway No. 80, a transcontinental public thoroughfare. This toll bridge was built by private capital, consent having been granted for its construction and use by an Act of Congress, Public Act 170 of the Sixty-Ninth Congress, approved May 3, 1926, 44 Stat. 388, and was opened for traffic on April 1, 1930. It was thereafter continuously operated as a private business venture. Its owner became bankrupt and was succeeded by Vicksburg Bridge Company, a Delaware Corporation,

from whom plaintiff acquired on April 30, 1947. Plaintiff avers that, since its purchase, the bridge has been operated economically and efficiently, all in accordance with the provisions of Chapter 283, Laws of Mississippi of 1938, under authority of which it acquired the property; that it has devoted all net earnings from toll charges to the retirement of revenue bonds ($7,000,-000) issued by it to enable its acquisition of the bridge and that it has, as its prime objective, the making of the bridge toll free to the general travelling public, other than for common carriers of passengers and freight. It is claimed that the bridge (three-fourths of which admittedly lies in Louisiana) is public property and, therefore, exempt from taxation under specific provisions of Section 4 of Article 10 of the Constitution of Louisiana and that, should it be held otherwise, the subjection of the structure to taxation is violative of the Federal Constitution for divers and sundry reasons.

Following a hearing on the merits of plaintiff's various contentions, which were vigorously opposed by defendant and intervenors, the trial judge rejected the demand and dismissed the suit. Hence this appeal.

After examination and study of the pleadings, the issues and the voluminous and comprehensive briefs submitted by opposing counsel, we think it apt to observe, at the outset, that, whereas numerous contentions, counter-contentions and other arguments have been presented in various forms and

aspects, the questions for determination are relatively simple and involve purely matters of law, the salient facts of the case having been stipulated.

■ The pivotal question is whether the Vicksburg bridge is free from taxation under Section 4 of Article 10 of our Constitution. That section prescribes the classes and types of property exempt from taxation in Louisiana. These exemptions are listed in fifteen separately numbered paragraphs placed under the heading "The following property, and no other, shall be exempt from taxation". Thus, it is ordained that our legislature is powerless to create tax exemptions or enlarge the scope of those provided by the Constitution. First Nat. Bank of Shreveport v. Board of Reviewers, 41 La.Ann. 181, 5 So. 408; Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15; Southland Inv. Co. v. Jeter, 171 La. 106, 129 So. 722; New Orleans Securities Co. v. City of New Orleans, 173 La. 1097, 139 So. 635 and State ex rel. United Seamen's Service, Inc. v. City of New Orleans, 209 La. 797, 25 So. 2d 596.

The first paragraph of the exemptions contained in Section 4 of Article 10 is "All public property". It is plaintiff's primary contention that the Vicksburg bridge is covered by this exemption. Its counsel profess that plaintiff's status as a political subdivision of Mississippi frees all property owned by it in Louisiana from taxation forasmuch as the adjective "all", used in connection with the words "public property", broadly signifies property owned or held by every public corporation, irrespective of the locality of its governmental operations, and rejects any construction limiting the exemption to property owned by Louisiana and its subdivisions.

■■ We think it plain that the exemption of all public property has reference only to property of Louisiana and its political subdivisions. There is no reason whatever to believe that the people of Louisiana, in adopting their constitution, intended to exempt from taxation the local property of foreign countries, other states or their political subdivisions.

Counsel nevertheless say, in elaboration of their argument relative to the effect of the adjective "all" upon the words "public property", that it must be assumed that the members of the Constitutional Convention had in mind the purpose of exempting every species of property owned by a public body, even though it be a foreign political corporation. In support of their position, they rely upon the opinion, on first hearing, in City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 66 So. 237.

We do not subscribe to this concept. In our view, the adjective "all" was employed solely for the purpose of including in the exemption property owned by the various political subdivisions of the State as well as that of the State itself. Nor can we accord any weight to the decision, on first hearing, in City of New Orleans v. Salmen Brick &

Lumber Co., as it was set aside by the granting of a rehearing and finally rejected by the court on the rehearing. In the opinion on rehearing, Justice O'Neill, speaking for the majority, makes evident the ultimate view of the court that the phrase "all public property" [135 La. 828, 66 So. 249.] does not include property of another State or political subdivision, for he cites, and comments upon with approval, the case of State of Kansas ex rel. Taggart v. Holcomb, 85 Kan. 178, 116 P. 251, 50 L.R.A.,N.S., 243, Ann.Cas.1912D, 800, where it was held that a standpipe or water plant, owned by Kansas City, Missouri, furnishing water to the inhabitants of that city but situated in the adjoining state of Kansas, was not public property as it did not belong to the state or any subordinate branch of the government of the state in which it was located.

Counsel for plaintiff further contend that the bridge is not taxable under the "all public property" exemption because it is dedicated to a public use. It is declared that it is not necessary that title to the property be vested in the state or in any of its political subdivisions in order for it to be exempt as public property and that, if the property is consecrated to public use, it is not taxable irrespective of the nature of the ownership. The cases of Administrators of the Tulane Education Fund v. Board of Assessors, 38 La.Ann. 292; Martin v. Louisiana Central Lumber Co., 150 La. 157, 90 So. 553, 562 and

State ex rel. United Seamen's Service, Inc. v. City of New Orleans, supra, are cited as sustaining the point.

■ Although the last cited case (State ex rel. Seamen's Service, Inc. v. City of New Orleans) is not appropriate,[1] it seems to be the well-settled jurisprudence that "Property dedicated to public use, the revenues of which serve a public purpose, is public property, although the title be not in the public". Martin v. Louisiana Central Lumber Co., supra.

In Administrators of Tulane Education Fund v. Board of Assessors, supra, the question involved was whether property given by Paul Tulane to the Administrators for the purpose of devoting the revenues produced by it for the education of the white youth of New Orleans came within the constitutional exemption of "all public property". In resolving affirmatively, the court found that it was not imperative that title be held by the public if the property has been dedicated to public use. It was observed: "The character of taxability is not ineffaceably stamped on property, and it may be removed by the act of its owner. Whenever he dedicates it to public use it passes under the dominion of the exemption that is accorded to public property. And that is what we meant when in the earlier part of this opinion we said that the question was whether the consecration of the

1. That case involved property dedicated to charitable uses and, therefore, falls within the exemption provided by paragraph 2 of Section 4 of Article 10 of the Constitution.

plaintiffs' revenues to a public use did not proprio vigore operate an exemption. The Legislature cannot exempt from taxation property that is constitutionally liable to it, but an owner of property may translate it into the domain of constitutional exemption by dedicating it to a public use."

■ Accordingly, it is manifest that, if the Vicksburg bridge was dedicated to the public use by plaintiff after its acquisition in 1947, the property became constitutionally exempt from taxes for the year 1948. But the flaw in plaintiff's position is that the facts do not sustain the conclusion sought. The stipulation of facts merely exhibits that it is not plaintiff's objective to operate the bridge for profit; that it is its present intention "as soon as the indebtedness of said bridge is retired or sufficiently reduced so that payment can be otherwise assured from other revenues", to abolish the toll charges as to privately owned and operated highway passenger carrying vehicles but not "as to commercial or common carrier vehicles, railroad cars, pipelines, telegraph and telephone wires and cables or as to any other similar use". Conceding, for purposes of discussion, that the eventual abolition of tolls on pleasure passenger vehicles will constitute an effective dedication of the structure for public use so as to place it within the constitutional exemption, it is difficult to perceive how plaintiff's intention can be regarded as a consecration of the property to public use. If the revenues derived from the tolls of the bridge were be-

ing used exclusively for its maintenance and economic operation, it might be reasonable to rule that there has been a dedication. But those are not the facts of the case. Actually, plaintiff is employing a substantial part of the revenue derived from tolls charged the general public to liquidate its obligation for the purchase price of the structure. Indeed, to hold that this bridge was dedicated to public use in 1948 merely because plaintiff evinces the intention of making it toll free at some future date, when the truth is that each and every person using it is required to pay, would be unrealistic, to say the least.

Counsel nonetheless persist that the bridge should be declared tax exempt as public property because the Legislatures of Mississippi and Louisiana have declared that the ownership and operation of the structure by political subdivisions constitutes governmental functions—Mississippi by Chapter 283 of the Laws of 1938, which declares and proclaims that the properties of the bridge are not subject to taxation— and Louisiana by the enactment of a virtually identical statute in 1944 containing the same declarations and proclamations. LSA:RS 48:851 et seq.

The answer to this postulation is evident. The Mississippi statute does not and could not exempt property situated in Louisiana from taxation by Louisiana and Act 287 of 1944 (the Louisiana statute) has application only to the acquisition of the bridge by a Louisiana parish and not by the county of

an adjoining state. The pronouncements contained in these statutes, relative to the ownership and operations of the bridge constituting governmental functions, have application solely to the acquisition of the bridge by a local subdivision of the particular state and have absolutely no bearing on the questions of constitutional exemption from taxation.

We therefore conclude that the judge correctly found that the bridge was not public property within the exemption specified in Paragraph 1 of Section 4 of Article 10 of the Constitution.

The next point advanced by plaintiff is that the bridge is specifically exempted from taxation by Paragraph 13 of Article 10, which was added to the Constitution by Act 41 of 1938, adopted on November 8, 1938. That paragraph reads: "There shall also be exempt from taxation any bridge hereafter constructed across the Mississippi River, if such bridge shall have been authorized or consented to by the Congress of the United States, together with the real estate and personal property appurtenant to such bridge when owned either by the State of Louisiana or by any municipality or political subdivision thereof, or by another state or by any municipality or political subdivision of such other state, if such bridge be free of tolls, or if such bridge be operated for tolls necessary for the proper maintenance, repair and operation of such bridge and its approaches under economical management, where it is proposed that said bridge shall be operated free of tolls after a sinking fund shall have been provided from tolls sufficient for the amortization of the cost of the bridge and its approaches, including reasonable interest and financing cost."

█ It seems perfectly obvious to us that the above quoted provision is inapplicable to plaintiff's bridge for several reasons. In the first place, the exemption was added to the Constitution long after the construction of the Vicksburg bridge and, by its very terms, applies only to "any bridge hereafter constructed * * *". More than that, it is a matter of common knowledge that the amendment was designed primarily to facilitate the building of a proposed bridge across the Mississippi River between Natchez, Mississippi and Vidalia, Louisiana which was to be owned and operated by the City of Natchez and which was subsequently constructed.

Yet, counsel maintain that we should take a broad view of the constitutional provision and held that the amendment covers the Vicksburg bridge—that this can be done by construing the clause "any bridge hereafter constructed" to apply to any bridge purchased or acquired after the adoption of the amendment.

█ To pursue the course suggested by counsel would require not an interpretation of the language used but a revision of the amendment, which manifestly is not within the sphere of our jurisdiction. The language of the constitutional amendment is

clear and explicit; it needs no judicial construction.

■ The other contentions of plaintiff have reference to asserted violations of the Federal Constitution in the event this court fails to accord the bridge a tax exemption under our own organic law. It is said initially that, since the Mississippi statute makes the bridge tax exempt in that state, the full faith and credit clause of the Federal Constitution, Art. 4, § 1, demands that it be likewise adjudged tax exempt in Louisiana. This proposition, unsupported by authority, is without substance. To approve it would be to accord to Mississippi extraterritorial jurisdiction which, we are sure, she has neither claimed nor assumed in enacting Chapter 283 of her 1938 laws.

■ Plaintiff's next proposition is that, by virtue of its ownership of the bridge, it is engaged in the performance of essential public functions and that therefore it has a right to the tax exemption. The right is said to stem from its reliance on the Act of Congress, authorizing the construction ·of the bridge, and the legislation of Louisiana and Mississippi, partaking of a compact between the states.

We find this contention somewhat difficult to understand. It is apparently predicated on the idea that, since Congress authorized the construction of the bridge and provided that it could be acquired by either Louisiana or Mississippi or their political subdivisions, and that, inasmuch as Louisiana and Mississippi have passed laws permitting their own subdivisions to purchase the bridge, this was a compact between the states which should be enforced. Suffice it to say that we think the point untenable for we experience much strain in regarding the legislation of Mississippi, Chapter 283, Laws of Mississippi of 1938, and Louisiana, Act 287 of 1944, to be agreements or compacts between these states.

■ It is also urged by counsel that the tax is void, being violative of Section 8 of Article 1 of the Federal Constitution, as an undue burden on interstate commerce. Counsel acknowledge that the Supreme Court of the United States, in Henderson Bridge Co. v. Kentucky, 166 U.S. 150, 17 S. Ct. 532, 41 L.Ed. 953, has ruled directly to the contrary, holding that the operation of a toll bridge between states is not an interstate business. But they suggest that the dissenting opinion in that case (it was a five to four decision) be adopted in the light of the facts of the case at bar. For our part, we see no reason to disagree with the Supreme Court of the United States aside from the fact that the decision in the Henderson Bridge Co. case has been approved in Detroit International Bridge Co. v. Corporation Tax Appeal Board, 294 U.S. 83, 55 S.Ct. 332, 89 L.Ed. 777.

Finally, counsel say that taxation of the bridge is discriminatory—and consequently violative of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States—as all other bridges spanning the

Mississippi River south of Memphis, Tennessee, are tax exempt.

We are unable to discern merit in this contention. Aside from other considerations, it is plain that the Fourteenth Amendment of the Federal Constitution, declaring that no state shall deprive any person of life, liberty or property without due process of law nor deny any person within its jurisdiction the equal protection of the laws, is utterly without application to the political subdivisions of a state, which cannot be viewed as a person within the purview of the constitutional provision. See Shelby v. City of Pensacola, 112 Fla. 584, 151 So. 53; Riley v. Stack, 128 Cal.App. 480, 18 P.2d 110 and Los Angeles County v. Superior Court, 128 Cal. 522, 18 P.2d 112.

The judgment appealed from is affirmed.