44 So.3d 272 (2010)
Clyde A. "Rock" GISCLAIR, Assessor for St. Charles Parish
v.
The LOUISIANA TAX COMMISSION.
No. 2010-C-0563.
Supreme Court of Louisiana.
September 24, 2010.
*273 PER CURIAM.[*]
Finding the petition fails to disclose a right of action in plaintiff, Clyde A. "Rock" Gisclair, to challenge the constitutionality of the Louisiana Tax Commission's (LTC) administration of the ad valorem taxes assessed against Entergy's[1] public service property, we sustain the peremptory exception of no right of action noticed by this Court on our own motion.
Recently, in Howard v. Administrators of Tulane Educational Fund, 07-2224, pp. 16-17 (La.7/1/08), 986 So.2d 47, 59-60, this Court discussed the peremptory exception of no right of action, explaining:
When the facts alleged in the petition provide a remedy under the law to someone, but the plaintiff who seeks the relief is not the person in whose favor the law extends the remedy, the proper objection is no right of action, or want of interest in the plaintiff to institute the suit. Harry T. Lemmon & Frank L. Maraist, 1 Louisiana Civil Law Treatise, Civil Procedure § 6.7, 121 (West 1999). The objection is urged through the peremptory exception of no right of action raised by the defendant or noticed by the court on its own motion, in either the trial or appellate court. Id.; La.Code Civ. Proc. arts. 927 and 2163. If the pleadings fail to disclose a right of action, the claim may be dismissed without evidence, but the plaintiff should be permitted to amend to state a right of action if he or she can do so. Lemmon & Maraist, supra; R.G. Claitor's Realty v. Juban, 391 So.2d 394, 398-99 (La. *274 1980);[2] La.Code Civ. Proc. art. 934. If the pleadings state a right of action in the plaintiff, the exceptor may introduce evidence to controvert the pleadings on the trial of the exception, and the plaintiff may introduce evidence to controvert any objections. Lemmon & Maraist, supra; La.Code Civ. Proc. art. 931.
* * *
A proper analysis of a no right of action exception requires a court to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La.Code Civ. Proc. art. 927; Reese v. State Dept. of Public Safety and Corrections, 03-1615, pp. 2-3 (La.2/20/04), 866 So.2d 244, 246; Industrial Companies, Inc. v. Durbin, 02-0665, pp. 11-12 (La.1/28/03), 837 So.2d 1207, 1216. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Reese, 03-1615 at p. 3, 866 So.2d at 246; Industrial Companies, Inc., 02-0665 at p. 12, 837 So.2d at 1216. The court begins with an examination of the pleadings. See R.G. Claitor's Realty, 391 So.2d at 398-99; Lemmon & Maraist, supra.

An examination of the petition at issue reveals plaintiff seeks to challenge the constitutionality of the LTC's application of the tax valuation methodology set forth in La. Const. art. VII, §§ 18(D)[3] and 21(F),[4] La.Rev.Stat. § 47:1853,[5] La.Rev.Stat. *275 § 47:1854,[6] and La.Rev.Stat. § 47:2321,[7] by specifically alleging:
Request for Injunction against Unlawful Exemptions
8.
Upon information and belief, and based upon its historical practices, the Commission intends to determine the value of Entergy's public service property that is subject to taxation in St. Charles Parish at January 1, 2009 by subtracting the book value of Entergy's tax exempt property from the fair market value of Entergy's property that is subject to taxation by St. Charles Parish and its various taxing and tax-recipient *276 bodies, including the Office of the St. Charles Parish Assessor.
9.
The Commission's exemption practice is unlawful and unconstitutional and in excess of the Commission's constitutional and legal authority. Under La. Const. Art. VII, Sec. 18(D), the "fair market value" of exempt property (and not its "book value") must be subtracted from the fair market value of a public service company's property to determine the fair market value of the property of a public service taxpayer that is "subject to taxation."
10.
Under information and belief, and based upon its historical practices, the foregoing exemption practice of the Commission is to be applied to all public service company appraisals and assessments that the Commission generates as of January 1, 2009 including, but not limited, to Entergy.
11.
Upon information and belief, and based upon its historical practices, the foregoing unlawful and unconstitutional exemption practice of the Commission will give Entergy (and other public service taxpayers) extra ad valorem tax exemptions that are prohibited under La. Const. Art. VII, Sec. 21(F).
12.
The above-described exemption practices of the Commission are in excess of the Commission's lawful and constitutional authority. Gisclair also alleges that, based upon its historical practices, these unlawful exemption practices exist and are applied and enforced with the authority of [a] Commission rule, de facto or otherwise, because the unlawful practices described herein are uniformly applied by the Commission to or are incorporated by the Commission within all of its public service property appraisals.
13.
The intention of the Commission to give Entergy and other public service taxpayers unlawful ad valorem tax exemptions in the manner and practice described above will cause a loss of ad valorem tax revenues to Gisclair and other tax recipient bodies in St. Charles Parish and will cause great and irreparable injury to Gisclair for which no adequate remedy exists at law.
Request for Injunction against Unlawful Appraisal Practices
14.
The Commission, under La. Const. Art. VII, Section 18(D), has the responsibility to assess and value "public service properties" at "fair market value". Public Service Properties are defined in La. R.S. 47:1851(M) and include "the immovable, major movable, and other movable property owned or used but not otherwise assessed in this Commission in the operations of each ... electric power company ... gas company[.]" Under La. R.S. 47:1853(B) [t]he properties of Entergy are "public service properties" under La. Const. Art. VII, Section 18(D) and La. R.S. 47:1851(M).
15.
Every lawful assessment of public service property by the Commission must be the product of the Commission's use of the methods of valuation mandated by La. R.S. 47:1853(B), which provides:

*277 B. (1) In appraising public service properties, the Louisiana Tax Commission shall:

(a) Employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value:
(i) The market approach.
(ii) The cost approach.
(iii) The income approach.
16.
In its practice, the Commission systematically and unlawfully exceeds it authority and violates the appraisal and valuation standards, methodology and practices required under La. R.S. 47:1853, La. R.S. 47:1854 and La. R.S. 47:2321 in valuing Entergy under the "Cost Approach" in the following respects:
a. In its practice, the Commission systematically and unlawfully allows a deduction for nuclear plant decommissioning costs, without determining the present value of such costs and then offsetting that deduction by the funds held in Entergy's nuclear plant decommissioning trust fund. The Commission should determine the present value of the nuclear plant decommissioning costs and then offset these costs by the sum maintained by Entergy in its nuclear plant decommissioning trust fund, the net effect being to eliminate any deduction for nuclear plant decommissioning costs. Legally, no deduction of nuclear plant decommissioning costs is allowable.
b. In its practice, the Commission systematically and unlawfully allows a deduction for AFUDC (allowance of funds used during construction). Legally, no AFUDC deduction is allowable.
c. In its practice, the Commission systematically and unlawfully includes only a portion of Construction Work In Progress or "CWIP" as an asset. Legally, no exclusion or reduction in CWIP is allowable.
17.
In its practice, the Commission systematically and unlawfully exceeds it authority and violates the appraisal and valuation standards, methodology and practices required under La. R.S. 47:1853, La. R.S. 47:1854 and La. R.S. 47:2321 in valuing Entergy under the "Income Approach", in the following respects:
a. In its practice, the Commission systematically and unlawfully utilizes an incorrect capitalization rate (or "cap rate") that routinely is too high and bears no relationship to Entergy's financial condition and performance. The determination of the lawful, appropriate and correct capitalization rate for Entergy is and is legally required to be based upon the financial condition of public utilities that are comparable in financial condition and performance to Entergy.
b. In its practice, the Commission systematically and unlawfully fails to adjust Entergy's income to take CWIP into account properly. Legally, this adjustment is required.
c. In its practice, the Commission systematically and unlawfully grants Entergy an "income shortfall" deduction.
18.
The Commission's use of the above described unlawful adjustments to the "cost approach" converts the Commission's purported "cost approach" into some other, customized, self-created appraisal *278 methodology (or "pseudo" methodology) which is neither a lawful nor a nationally recognized cost approach, income approach or market approach technique of appraisal. Its use by the Commission is unlawful and outside the Commission's grant of authority.
19.
The Commission's use of the above described unlawful adjustments to the "income approach" converts the Commission's purported "income approach" into some other, customized, self-created appraisal methodology (or "pseudo" methodology) which is neither a lawful nor a nationally recognized income approach, cost approach or market approach technique of appraisal. It's use by the Commission is unlawful and outside the Commission's grant of authority.
20.
Upon information and belief, the Commission intends to employ the same unlawful pseudo-cost approach and pseudo-income approach described above to its valuation and assessment of Entergy as of January 1, 2009. The above-described cost approach and income approach practices of the Commission that are challenged herein are in excess of the Commission's lawful and constitutional authority. Gisclair also alleges that these unlawful practices exist and are applied and enforced with the authority of a Commission rule, de facto or otherwise, because the unlawful practices described herein are uniformly applied by the Commission to or are incorporated by the Commission within all of its public service property appraisals.
21.
Additionally and in the alternative, the above-described appraisal practices of the Commission as to the deduction of nuclear plant decommissioning costs, the deduction of AFUDC, and the exclusion of CWIP essentially operate as de facto ad valorem tax exemptions because the deduction or exclusion of these items has the effect of exempting Entergy's property from ad valorem taxation. These de facto exemptions are illegal because they are not included among the exclusive list of allowable ad valorem tax exemptions under La. Const. Art. VII, Sec. 21(F).
22.
The intention of the Commission to apply the above described adjustments to the cost approach and income approach when its values and assesses Entergy will cause an unlawful loss of ad valorem tax revenues to Gisclair and other tax recipient bodies in St. Charles Parish and will cause great and irreparable injury to Gisclair for which no adequate remedy exists at law.
As clearly evident in this petition, the substantive right at issue herein is the right to challenge the application of the relevant laws governing the tax valuation of public service properties. It follows, therefore, the initial question presented in this litigation is to whom does the law recognize this right to challenge belong.
According to his petition, plaintiff "brings this action on authority of La. R.S. 47:1998(C) and such other provisions of law as may govern this action."[8] The provisions of La.Rev.Stat. § 47:1998(C) *279 upon which plaintiff relies state: "the assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state." Though entitled "Judicial review, generally," this statutory provision read in context clearly governs suits contesting local assessments made by local assessors and is contained in the general assessment provisions of our ad valorem property tax statutes,[9] not in the special provisions governing the assessment of public service properties set forth in La. Rev.Stat. §§ 47:1851-1858.
La.Rev.Stat. § 47:1856(G), however, is contained in the tax provisions specific to the assessment of public service properties[10] and provides:
Any taxpayer asserting that a law or laws, including the application thereof, related to the valuation or assessment of public service properties is in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state shall file suit in accordance with the provisions of R.S. 47:2134(C) and (D).[11] The provisions of R.S. 47:1856(E) and *280 (F) shall be applicable to such proceedings; however, the tax commission and all affected assessors and the officers responsible for the collection of any taxes owed pursuant to such assessment shall be made parties to such suit. If such suit affects assessments of property located in more than one parish, such suit may be brought in either the district court for the parish in which the tax commission is domiciled or the district court of any one of the parishes in which the property is located and assessed. No bond or other security shall be necessary to perfect an appeal in such suit. Any appeal from a judgment of the district court shall be heard by preference within sixty days of the lodging of the record in the court of appeal. The appeal shall be taken thirty days from the date the judgment of the district court is rendered. (Emphasis added).
Under its provisions, the right of action sought to be enforced in this petition belongs solely to the public service taxpayer. Moreover, in accordance with its provisions, the plaintiff in this case, as an affected assessor, shall merely be made a party to the taxpayer's suit if so filed, but is not granted the right to bring suit.[12]
Applying the statute specifically directed to both the right of action as well as the cause of action at issue, we find our Legislature under the clear and explicit language of La.Rev.Stat. § 47:1856(G) granted the right to bring an "as applied" challenge regarding the tax valuation of public service property solely to the public service taxpayer, and not to the assessor as plaintiff's petition alleges. Therefore, because the petition fails to disclose a right of action in plaintiff, the peremptory exception of no right of action is properly noticed and sustained by this Court under the authority of La.Code Civ. Proc. art. 927. See Howard, 07-2224 at p. 16, 986 So.2d at 59; R.G. Claitor's Realty, 391 So.2d at 398-99. Moreover, because the grounds of this exception cannot be removed by amendment, we dismiss with prejudice plaintiff's petition against the LTC. See La.Code Civ. Proc. art. 934 ("If the grounds of the objection raised *281 through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.").

DECREE
For the foregoing reasons, we hereby grant writ and render judgment sustaining the peremptory exception of no right of action noticed on our own motion and dismissing plaintiff's petition with prejudice.
Writ Granted; Exception of No Right Action Sustained; Dismissed.
VICTORY and WEIMER, JJ., dissents with reasons.
VICTORY, J., dissenting.
I dissent from the per curiam opinion which holds that the assessor has no right of action to challenge the constitutionality of the Louisiana Tax Commission's ("LTC") administration of ad valorem taxes assessed against public service property. In my view, the assessor has the duty under La. R.S. 47:1998 to challenge the LTC's action in this case.
La. R.S. 47:1998, upon which the assessor relies in filing suit, is found in Title 47, Subtitle III of the Revised Statutes governing the "Provisions Relating to Ad Valorem Taxes," and is entitled "Judicial review; generally." La. R.S. 47:1856 is also found under this Subtitle. It is important that La. R.S. 47:1998(C) doesn't just give the assessor the authority to file suit. It mandates that the assessor file suit "when necessary to protect the interest of the state." La. R.S. 47:1998(C). True, the specific provisions relating to "public service properties," La. R.S. 47:1851-1858, do not contain any provisions giving the assessor the right to file suit, and La. R.S. 47:1856 plainly gives the affected taxpayer the right to file a legality or other challenge and provides the specific procedures whereby the affected taxpayer's challenges will be heard. However, I see no reason why this statute giving the taxpayer the right to sue should preclude the assessor from exercising his mandated duty under La. R.S. 47:1998. In addition, while La. R.S. 47:1856(G) requires that the assessor be named a party to a suit filed by the taxpayer, the assessor will never be able to use this to argue that his district is being deprived of taxes to which it is constitutionally entitled because the taxpayer will never file suit if the assessment is low. In La. R.S. 47:1853-1855, the legislature set out strict requirements for the LTC to follow in assessing public service property; and, if the per curiam is correct, then the LTC's assessment is beyond review where the assessment deprives the local tax collecting district of taxes to which it is legally entitled. It is only when the tax is alleged to be too high does their decision come under review. I know of no other state agency of this type whose decisions are unreviewable, especially in such a onesided way. While LTC is clearly trying to assert its authority over local assessors when it comes to public service property, someone must have the right to prevent the LTC from making assessments that are either unconstitutionally or incorrectly low. Given that the assessors are mandated to file suit to protect the interest of the state in La. R.S. 47:1998, I see no reason why this statute could not apply to ad valorem taxes assessed against public service property. This is especially true given that it is contained in the general section relative to judicial review of LTC decisions, and that the specific sections dealing with public service properties do not preclude the assessor from filing suit.
For the above reasons, I respectfully dissent.
*282 WEIMER, J., dissents.
I believe the assessor is afforded a right of action based on the statutory language of LSA-R.S. 47:1998, which is titled "Judicial review; generally" and provides in Paragraph C that "[t]he assessor shall bring suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state." The majority dismisses the clear language of this provision because of its placement in the revised statutes. However, while the placement of a provision can be a useful aid in determining the intent of the legislature, it is not dispositive. "The classification and organization of the sections of the Revised Statutes is made of the purpose of convenience, reference, and orderly arrangement, and no implication or presumption of a legislative construction shall be drawn therefrom." LSA-R.S. 1:12. Furthermore, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4.
Moreover, in determining whether the assessor has a right of action under the facts of this case, other provisions furnish guidance. Louisiana Revised Statute 47:1856(D)(1) authorizes any taxpayer dissatisfied with the final determination of assessed valuation by the Louisiana Tax Commission to institute suit appealing the correctness or legality of such final determination of assessed valuation for taxation. Although this provision authorizes the taxpayer to institute suit, it does not preclude an assessor of a parish affected by the assessment from instituting suit. Also noteworthy is the fact that Paragraph G of Section 1856 requires that "all affected assessors and the officers responsible for the collection of any taxes owed pursuant to such assessment shall be made parties to such suit."
Additionally, LSA-R.S. 47:1903.3 provides that "[n]otwithstanding any other law to the contrary, in any cause of action brought under the provisions of R.S. 47:1856, 1857, 1998, or 2110, the assessor of the parish or district where the property is located may intervene in such suit and become a party thereto."[1]
When considering these provisions together  one of which authorizes the assessor to bring an action, another of which requires the assessor to be made a party, and the other which allows an assessor to intervene  it is logical to conclude that, under the facts of this case, the assessor has a right of action. Such a finding is consistent with this court's pronouncement in Wooden v. Louisiana Tax Commission, 94-2481 (La.2/20/95), 650 So.2d 1157. In Wooden, this court recognized that a tax assessment district had a significant real and actual interest in maximizing the collection of ad valorem taxes on all taxable property in the parish. In light of this fact, the assessor, as chief executive officer of the tax assessment district, was found to have standing to bring an action seeking a declaration of the constitutionality of a statute which operated to reduce the ad valorem taxes collections to which the district was partially entitled. See Wooden, 94-2481 at 7, 650 So.2d at 1160.
For these reasons, I respectfully dissent.
NOTES
[*] Kimball, C.J., did not participate in the deliberation of this opinion.
[1] "Entergy" as used in this opinion refers to Entergy Louisiana, Inc., Entergy Louisiana L.L.C. and Entergy Louisiana Properties, L.L.C., whether in their own right and/or as full or partial successors in interest to Entergy Louisiana, Inc.
[2] This Court with Justice Marcus as organ for the Court held:

La.Code Civ.P. art. 927 authorizes this court to notice on our own motion the peremptory exception of failure to disclose a right or interest in the plaintiff to institute the suit. Here, the pleadings fail to disclose the right or interest of Nancy M. Claitor to institute this suit. Therefore, her claims must be dismissed.
R.G. Claitor's Realty, 391 So.2d at 398-99.
[3] La. Const. art. VII, § 18(D) provides:

Valuation. Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.
[4] La. Const. art. VII, § 21(F) provides:

Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state. The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.
The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.
[5] La.Rev.Stat. § 47:1853 provides:

A. In accordance with the provisions of this Section and Sections 1854 and 1855, the Louisiana Tax Commission shall, on or before September first of each calendar year, appraise, for taxation, public service properties based upon each company's report, as defined in Section 1852(A) and such other information as may be available to the Louisiana Tax Commission. In the absence of a report the Louisiana Tax Commission shall appraise the properties of any company failing to file such a report upon any information which the Louisiana Tax Commission, in its best judgment, deems sufficient.
B.(1) In appraising public service properties, the Louisiana Tax Commission shall:
(a) Employ all of the following nationally recognized techniques of appraisal, where applicable, to best determine fair market value:
(i) The market approach.
(ii) The cost approach.
(iii) The income approach.
(b) Assign such weight to each approach as is appropriate to best determine fair market value.
(2) However, all public service properties of the same nature and kind shall be appraised in the same manner. The appraised value of all lands owned by the company in this state shall be deducted from the total appraised value of the public service properties and shall be assessed by the Louisiana Tax Commission and shown as a separate item on the tax roll.
(3) Notwithstanding any other law to the contrary, for the years 1993 and 1994, the commission shall allocate the value of all inventories of natural gas owned by a pipeline company in this state to each tax jurisdiction in which the inventories are located according to its long-held administrative construction and interpretation of the law. At the expiration of the time provided herein, the commission shall develop a fair, equitable, and consistent system of valuation of such inventories for all parishes affected by any revisions to ad valorem property tax procedures, including but not limited to the parishes of Bienville, East Carroll, Lincoln, and West Carroll.
C. All taxable immovable, major movable, and other movable public service properties of a company that is nonoperating or nonutility shall be appraised and assessed by the local tax assessor in the same manner and by the same standards as similar property in the parish in which it is located.
D. In no event, however, shall the Louisiana Tax Commission adopt schedules that reflect average life values of the property instead of appraising the individual companies.
E. The appraisal for the first year only shall be accomplished by the Louisiana Tax Commission through the use of an independent appraisal firm or firms qualified in the appraisal of public service properties.
[6] La.Rev.Stat. § 47:1854 provides:

All public service properties shall be assessed for taxation in accordance with the provisions of the Louisiana Constitution of 1974. Land shall be assessed at ten percent of fair market value; electric cooperative properties shall be assessed at fifteen percent of fair market value; and all other properties shall be assessed at twenty-five percent of fair market value.
[7] La.Rev.Stat. § 47:2321 provides:

Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used.
[8] We note at the outset the cases plaintiff relies upon in his various briefs to the courts are clearly distinguishable. Hester v. Louisiana Tax Com'n, 227 La. 1022, 81 So.2d 381 (1955), pre-dates the 1976 enactment of the public service property tax provisions at issue, but more importantly, like Wooden v. Louisiana Tax Com'n, 94-2481 (La.2/20/95), 650 So.2d 1157, did not involve public service property or the provisions governing the taxation of such properties. While Wooden dealt with the application of homestead exemptions, Hester involved the cancellation of a tax assessment levied against a toll bridge, which this Court had previously ruled was not a public utility, see Warren County v. Hester, 219 La. 763, 54 So.2d 12, 15 (1951), and which property the LTC had no authority to assess under the general assessment provisions of our tax statutes, La.Rev.Stat. §§ 47:1956-1998.
[9] Specifically, this provision is contained in La.Rev.Stat. Title 47, Revenue and Taxation, Subtitle III, Provisions Relating to Ad Valorem Taxes Chapter 3, Assessment Procedures.
[10] This provision is contained in La.Rev.Stat. Title 47, Revenue and Taxation, Subtitle III, Provisions Relating to Ad Valorem Taxes, La. R.S. 47:1856 falls under Chapter 2, State Supervision of Levy and Assessments, Part III, Assessment of Public Service Properties.
[11] These provisions of La.Rev.Stat. § 47:2134 provide:

C. (1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.
(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.
(3) In any such legality challenge suit, service of process upon the officer or officers responsible for collecting the tax, the assessor or assessors for the parish or district, or parishes or districts in which the property is located, and the Louisiana Tax Commission shall be sufficient service, and these parties shall be the sole necessary and proper party defendants in any such suit.
(4) If the taxpayer prevails, the collecting officer or officers shall refund such amount to the taxpayer with interest at the actual rate earned on the money paid under protest in the escrow account during the period from the date such funds were received by the collecting officer or officers to the date of the refund. If the taxpayer does not prevail, the taxpayer shall be liable for the additional taxes together with interest at the rate set forth above during the period from the date the notice of intention to file suit for recovery of taxes was given to the officer until the date the taxes are paid.
D. The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject matter for a full and complete adjudication of all questions arising in connection with a correctness challenge or the enforcement of the rights respecting the legality of any tax accrued or accruing or the method of enforcement thereof. The right to sue for recovery of a tax paid under protest as provided in this Section shall afford a legal remedy and right of action at law in the state or federal courts where any tax or the collection thereof is claimed to be an unlawful burden upon interstate commerce, or in violation of any act of the Congress of the United States, the Constitution of the United States, or the constitution of the state. The portion of the taxes which is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of such suit shall not be made subject to the protest.
[12] Additionally, this absence of authority on the part of the affected assessor to bring suit under La.Rev.Stat. § 47:1856 is further recognized by the right of intervention granted in La.Rev.Stat. § 47:1903.3, which provides: "Notwithstanding any other law to the contrary, in any cause of action brought under the provisions of R.S. 47:1856, 1857, 1998, or 2110, the assessor of the parish or district where the property is located may intervene in such suit and become a party thereto." Instead of granting to the assessor a right of action, this provision limits his authority to mere intervention.
[1] In my opinion, this provision does not limit the assessor's authority to mere intervention. Rather, it simply authorizes an affected assessor to intervene in actions that have been filed by the taxpayer.