NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-565

SABRINA FRANKLIN LEE

VERSUS

GEORGE VINCENT BAILEY, M.D.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-818-13
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery,
Judges.


AFFIRMED.

Mark W. Judice
Michelle R. Judice
Daniel C. Palmintier
Judice & Adley
P. O. Drawer 51769
Lafayette, LA 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANTS/APPELLEES:
    George Vincent Bailey, M.D.
    Bailey & Elias Obstetrical Care, LLC

Sophia J. Riley
11019 Perkins Rd., Ste D
Baton Rouge, LA 70810
(225) 761-0350
COUNSEL FOR PLAINTIFF/APPELLANT:
    Sabrina Franklin Lee

**EZELL, Judge.**

Sabrina Lee filed suit against Dr. George Bailey and others claiming that Dr. Bailey committed malpractice by failing to diagnose a ureterovaginal fistula following a hysterectomy. During the course of the court proceedings, Dr. Bailey filed a motion for summary judgment which was granted by the trial court. Ms. Lee then filed the present appeal. For the following reasons, we affirm the judgment of the trial court.

## FACTS

On December 9, 2010, Dr. Bailey, assisted by Dr. Darryl Elias, Jr., performed a total laparoscopic hysterectomy on Ms. Lee. Ms. Lee was discharged from the hospital with no problems. On December 18, 2010, Ms. Lee went to the emergency room complaining of leaking urine. The ob-gyn on call performed a vaginal exam and found no leaking fluid and that she was healing well following the hysterectomy. She was instructed to follow up with Dr. Bailey or Dr. Elias.

Ms. Lee saw Dr. Elias on December 20, 2010, about the leaking urine problem. Dr. Elias examined Ms. Lee and found that everything was normal. On December 22, 2010, Ms. Lee returned to see Dr. Elias complaining of leaking urine daily and light headedness. Dr. Elias ordered a transfusion and a voiding cystourethrogram. The results of the cystourethrogram were normal.

Dr. Bailey examined Ms. Lee on December 28, 2010. At this exam she reported that she had been experiencing vaginal leaking of fluid which started five days after the surgery. Dr. Bailey observed a slight serous discharge from the vaginal cuff but no urine leakage. When Ms. Lee returned for a follow-up visit with Dr. Bailey on January 18, 2011, there was no more leakage and she was healing well. However, two days later, she called with a report of leakage. By the

time she saw Dr. Bailey on January 27, 2011, the leakage had resolved. At this visit, Dr. Bailey removed a small piece of necrotic tissue from the right side of the vaginal cuff. Ms. Lee was advised to see him again but never returned.

Ms. Lee next went to see Dr. Yolunda Taylor on February 7, 2011, with complaints of frequent urination and watery-like discharge from the vaginal area. After examination, Dr. Taylor referred Ms. Lee to Dr. Charlie Bridges, a urologist, for evaluation of a probable vesicovaginal fistula.

Dr. Bridges examined Ms. Lee on February 7, 2011, and determined that Ms. Lee was leaking urine. Dr. Bridges scheduled an intravenous pyelogram and cystoscopy. The intravenous pyelogram indicated a slight delay in function on the left side with marked pyelocaliectasis and uretectasis down to the pelvic rim. Cystoscopy revealed the ureteral orifices were normal, but the left side appeared somewhat edematous.

On February 16, 2011, Dr. Bridges performed a cystoscopy and a left retrograde pyelogram. The results revealed that the distal left ureter was totally obstructed. Dr. Bridges determined that Ms. Lee had a left ureterovaginal fistula, and a nephrostomy tube was placed in the renal pelvis. Subsequently, on February 24, 2011, Dr. Bridges performed a left ureteral reimplantation with placement of a ureteral stent and removed the nephrostomy tube. By May 11, 2011, the procedure proved successful.

On December 6, 2011, Ms. Lee filed a request for a medical review panel. The claim was submitted to a panel of three certified ob-gyns. On September 9, 2013, all three members of the medical review panel determined that there was no causal connection between Dr. Bailey's alleged negligence and Ms. Lee's alleged injuries, recognizing that the development of an ureterovaginal fistula is a known

complication of surgery. Two of the three panel members found that Dr. Bailey failed to recognize this complication of surgery but that Ms. Lee did not suffer any permanent injuries as a result of this failure.

Ms. Lee then filed the present lawsuit in December 2013. In January 2015, the defendants filed a motion for summary judgment alleging that Ms. Lee had not presented any expert medical testimony that Dr. Bailey caused injury to Ms. Lee. A hearing on the motion was set for March 3, 2015. On February 25, 2015, Ms. Lee requested a continuance due to the fact that she had retained an expert witness but had been unable to secure his affidavit and report in time to oppose the defendants' motion for summary judgment, due to severe weather in the north and the expert's travel schedule.

Prior to the hearing on the motion for summary judgment, arguments on the requested continuance were heard on March 3, 2015. The trial court denied the motion for continuance. The trial court then granted the motion for summary judgment filed by the defendants. On March 23, 2015, Ms. Lee filed a motion for new trial, which the trial court denied. Ms. Lee then filed the present appeal.

## SUMMARY JUDGMENT

Ms. Lee argues that the trial court's grant of the defendants' motion for summary judgment is contrary to Louisiana law. She further claims that the trial court's refusal to admit her expert affidavit and expert report during the summary judgment phase was an abuse of discretion. Ms. Lee also claims that the trial court's denial of her motion for new trial to consider this affidavit and report of her expert medical witness is contrary to Louisiana law.

Regarding the admission of the affidavit of Ms. Lee's expert, La.Code Civ.P. art. 966(B)(1) provides that opposing affidavits shall be served pursuant to

3

La.Code Civ.P. art. 1313 within the time limits provided in La.Dist.Ct.R., App. 9.9. Louisiana District Court Rule 9.9 requires that a party opposing a motion must furnish the trial court and the other parties with opposition memorandum at least eight days before the hearing. This time limitation is mandatory, and affidavits that are not timely filed can be ruled inadmissible and properly excluded by the trial court. *Buggage v. Volks Constructors*, 06-175 (La. 5/5/06), 928 So.2d 536; *Rogers v. Hilltop Ret. & Rehab.*, 13-867 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053.

Ms. Lee initiated the medical review panel complaint in December 2011. The medical review panel rendered its decision in September 2013. Ms. Lee then filed her suit for damages in December 2013. A little over a year after the filing of the petition, the defendants filed a motion for summary judgment in January 2015. The hearing on the motion was set for March 3, 2015.

Ms. Lee filed a motion for continuance on February 25, 2105. This was only six days before the day of the hearing on the motion for summary judgment. *See* La.Code Civ.P. art. 5059. Arguments on the motion for continuance were heard on the same day as the summary judgment hearing prior to the hearing on the summary judgment. In her motion for continuance, Ms. Lee claims that she attempted to get an expert opinion supporting her case but severe weather in the north and travel schedules prevented the expert from completing the affidavit. At the hearing, counsel for Ms. Lee explained that a copy of her expert affidavit was faxed to opposing counsel on February 26. However, counsel for the defendants stated that he never received it. No proof that it had been faxed was offered by Ms. Lee.

The trial court determined that Ms. Lee had ample opportunity to get an expert report due to the fact that over a year had passed since suit was filed.

4

Furthermore, Ms. Lee's action had been pending for a little over three years since the filing of the medical review panel action. The trial court denied the motion for continuance and refused to allow the admittance of Ms. Lee's expert affidavit. We find that the trial court did not abuse its discretion in its refusal to allow admission of Ms. Lee's expert affidavit which was not filed within the mandatory time limits of La.Dist.Ct.R., App. 9.9. *Guillory v. Chapman*, 10-1370 (La. 9/24/10), 44 So.3d 272.

We now turn to addressing the merits of the defendants' motion for summary judgment. The parties acknowledge that a ureterovaginal fistula is a known complication of hysterectomy surgery. Ms. Lee's complaint is that Dr. Bailey's failure to diagnose the ureterovaginal fistula was a breach of the standard of care and that breach caused her damages.

The purpose of a motion for summary judgment is to "secure the just, speedy, and inexpensive determination" of actions. La.Code Civ.P. art. 966(A)(2).

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issues as to material fact, and that mover is entitled to judgment as a matter of law.

La.Code Civ. P. art. 966(B)(2).[1]

The party seeking summary judgment bears the burden of proof. La.Code Civ. P. art. 966(C)(2). However, if the moving party will not bear the burden of proof at trial, he does have to negate all essential elements of the adverse party's claim. *Id*. He only needs to establish that there is an absence of factual support for

---

[1] Louisiana Code of Civil Procedure Article 966 was recently amended by Acts 2015, No. 422. Pursuant to Section 2 of the Act, the provisions of the Act do "not apply to any motion for summary judgment pending adjudication or appeal on the effective date of [the] Act." Pursuant to Section 3 of the Act, it becomes effective on January 1, 2016.

one or more elements essential to the adverse party's claim. *Id.* If the adverse party is unable to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact," and the moving party is entitled to summary judgment. *Id.*

To prevail in a medical malpractice action, a plaintiff must establish by a preponderance of the evidence: (1) the applicable standard of care; (2) a breach of the applicable standard of care; and (3) a causal connection between the breach and the resulting injury. La.R.S. 9:2794. "Expert testimony is also required to establish causation unless the causal connection between the breach of the standard and the plaintiff's damages are obvious." *Rogers*, 153 So.3d at 1060. The defendants in a medical malpractice action are not required to include evidence concerning the causation of the plaintiff's alleged injuries in order to meet their burden of proof to establish entitlement to summary judgment. *Id.* Rather, as a party not bearing the burden of proof at trial, the defendants are only required to point out the absence of factual support that they caused any of the plaintiff's damages. *Id.* While the issue of causation in medical malpractice actions is usually an issue for the fact finder's determination, it is possible to determine this issue on summary judgment if reasonable minds could not differ. *Id.* An appellate court's review of a grant or denial of a motion for summary judgment is de novo. *Id.*

The defendants claim that Ms. Lee cannot prove the essential element of causation without expert medical testimony. The defendants offered the affidavit testimony of Dr. Stephen D. Seymour, a board certified obstetrician-gynecologist. Dr. Seymour stated that Dr. Bailey and Bailey & Elias Obstetrical Care, L.L.C. met the appropriate standard of care at all times in the treatment and management of

Ms. Lee. He observed that injury to the urinary tract is a known risk associated with a hysterectomy. Regarding the diagnosis of an injury to Ms. Lee's urinary tract, Dr. Seymour specifically stated that;

> Sabrina Lee underwent several examinations with other physicians who did not find evidence of a fistula, and there was partial occlusion and intermittent decompression of the ureter that did not allow for diagnosis of the urterovaginal fistula [in] the immediate post-operative period; the delay in diagnosis of the ureterovaginal fistula was therefore reasonable under the circumstances.

Dr. Seymour further attested that even if a diagnosis of a ureterovaginal fistula been made on December 28, 2010, when Dr. Bailey examined Ms. Lee, that Ms. Lee, more probable than not, would have still required treatment with a nephrostomy tube for several weeks until the ureter could be reimplanted. During this time, Ms. Lee's symptoms of intermittent leakage of urine would have been the same. Dr. Seymour noted that reimplantation of Ms. Lee's ureter at approximately nine weeks after the hysterectomy was with within the standard of care and normal recommendations for delayed reimplantation and that she has suffered no permanent damage.

While two of the doctors on the medical review panel found that Dr. Bailey breached the standard of care in failing to identify a known complication of the surgery, they both agreed that the breach did not cause any damages. There is no evidence in the record to support Ms. Lee's claim, expert testimony or otherwise, that the defendants caused any damages. Therefore, we find that Ms. Lee failed to rebut the defendants' showing with regard to this essential element on their motion for summary judgment and the defendants are entitled to judgment as a matter of law. Accordingly, the trial court was correct in granting the motion for summary judgment.

## NEW TRIAL

Ms. Lee argues that the trial court should have used its discretion and granted a new trial to consider her expert affidavit and report to avoid a miscarriage of justice. Ms. Lee cites La.Code. Civ.P. art. 1973 which allows a trial court the opportunity to grant a new trial when there is a good reason for the new trial. Citing La.Code Civ.P. art. 1972(2),[2] Ms. Lee argues that an act of God, i.e. the severe weather in the north, prevented her from obtaining the evidence which was pivotal to her opposition to the defendants' motion for summary judgment.

An appellate court's review of a trial court's ruling on a motion for a new trial is whether the trial court abused its discretion. *Holloway v. Drilling Equip. Inc.*, 12-355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699.

Ms. Lee cites the case of *Peters v. Hortman*, 03-2597 (La.App. 1 Cir. 10/29/04), 897 So.2d 131, *writ denied*, 04-2923 (La. 4/4/05), 893 So.2d 885, where the first circuit held that the plaintiffs in a medical malpractice action were entitled to a new trial even though summary judgment had been entered in favor of defendants. During the summary judgment hearing, the trial court rejected an unsworn letter from the plaintiffs' medical expert stating that the defendant physician had breached the standard of care. In plaintiffs' motion for new trial, the same report was submitted in affidavit form. The first circuit found that the trial court abused its discretion in not granting the new trial because the plaintiffs had identified their expert prior to summary judgment and had submitted the report at the time of the summary judgment.

---

[2] Louisiana Code Civil Procedure Article 1972(2) provides that a new trial shall be granted "[w]hen the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial."

In *Dupree v. Louisiana Medical Mutual Ins. Co.*, 11-366 (La.App. 3 Cir. 10/5/11), 74 So.3d 880, the trial court entered summary judgment for the defendants in a medical malpractice action for failure to submit an expert affidavit. This court found that the trial court abused its discretion in denying the plaintiffs' motion for new trial which was submitted with an expert affidavit that identified three specific acts of medical negligence. Counsel for the plaintiffs explained that he had declined to submit an expert affidavit at the time of the summary judgment hearing because he was relying on the scheduling order which provided for expert reports to be exchanged several months in the future. This court found that "the facts, the law, and the plaintiffs' prudence and initiative in prosecuting [the] case, compel[ed] a finding of an abuse of discretion." *Id.* at 883. This court further stated that, "[r]are is the case where we find an abuse of the trial court's great discretion. This instance is indeed one of rarity." *Id.*

In the present case, we have already discussed why the trial court did not abuse its discretion in refusing to admit the affidavit at the hearing on the motion for summary judgment, which same reasoning applies to the trial court's refusal to grant the motion for new trial. There are no rare circumstances in this case which justify this court finding an abuse of the trial court's great discretion. Furthermore, Ms. Lee's expert affidavit is not *new* evidence as contemplated by La.CodeCiv. P. art. 1972(2). We see no good cause to grant Ms. Lee's motion for new trial and conclude the trial court did not abuse its discretion in denying the motion for new trial. *Decker v. Kibler*, 98-1385 (La.App. 3 Cir. 3/17/98), 731 So.2d 282, *writ denied*, 99-1731 (La. 9/24/99), 747 So.2d 1128.

For the foregoing reasons, the judgments of the trial court granting summary judgment in favor the defendants and denying Ms. Lee's motion for new trial are affirmed. All costs of this appeal are assessed to Sabrina Lee.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.